John W. Olmstead, Claimant, v. The State of New York, Defendant.

Claim No. 17037.

Court of Claims, January 20, 1925.

State — lands appropriated — motion, under Court of Claims Act, § 20, to bring in additional parties to claim to recover compensation for lands appropriated by State under Conservation Law, § 59, and Laws of 1917, chap. 146 — claimant acquired title to lands by tax deed upon sale by State Comptroller — claimant not disqualified from purchasing at tax sale where lands were wild and situated in county other than that in which claimant resided — tax deed cut off any title outstanding in original patentees or successors, and is valid — motion denied.

One who holds a tax deed as the result of a valid tax sale obtains thereby a good title as against all the world, except one to whom the purchaser owed the duty to pay the tax, or one in such relation to the purchaser, or to the lands, or to both, as that the divesting of his title or interest would amount to an abuse or violation of a fiduciary relation or other breach of good faith.

Accordingly, defendant's motion, under section 20 of the Court of Claims Act, to bring in additional parties to a claim to recover compensation for lands, appropriated by the State pursuant to section 59 of the Conservation Law and chapter 146 of the Laws of 1917, should be denied, where it appears that the claimant acquired title to the lands by a tax deed upon a tax sale by the State Comptroller; that all proceedings leading up to and culminating in the tax sale were regular, since the sale was a valid one and the Comptroller's deed effectually cut off any title which may have been outstanding.

Nor was claimant disqualified from purchasing the lands at the tax sale, though eleven years previously he had obtained a deed to a portion of the land, where the lands were wild, unoccupied forest tracts lying in a county other than that in which the claimant resided, and the assessments were not against the claimant but against the land, since there rested upon the claimant no duty to pay the taxes for which said lands were sold.

Moreover, if, as the defendant urges, title to the lands never had gone out of the original patentees or their successors, and the deed which claimant obtained prior to the tax sale conveyed to him no interest in the lands, claimant was as free to become a purchaser at the tax sale as a stranger and was not disqualified.

Motion, pursuant to section 20 of the Court of Claims Act, to bring in additional parties to claim for lands appropriated by the State.

*Sheridan P. Wait*, for the claimant.

*Carl Sherman*, Attorney-General [*Clarence Cummings*, Deputy Attorney-General], of counsel], for the State of New York.

Smith, J.:

This claim has been filed to recover compensation for lands appropriated by the State of New York, pursuant to the provisions of section 59 of the Conservation Law (as added by Laws of 1916, chap. 451, and amd. by Laws of 1919, chap. 290, and Laws of 1921, chap. 206) and chapter 146 of the Laws of 1917. The lands

appropriated are wild forest lands, and are described as " Hamilton county, Benson township, lot three hundred eighty-one, being proposal No. seventy-eight." Claimant claims to have been the sole owner in fee of the lands at the time of their appropriation.

The Attorney-General disputes such claim, and asserts that there is at least an apparent title, paramount to claimant's title, outstanding in the heirs or other successors in interest of George Bradley and David Underwood, and moved, pursuant to the provisions of section 20 of the Court of Claims Act (Laws of 1920, chap. 922, as added by Laws of 1923, chap. 671) for an order bringing in as additional parties to this claim seventeen persons, alleged to be successors to the Bradley and Underwood interests. The lands were appropriated in June, 1919, and have not yet been paid for. Should this motion be granted, a further delay of several months will be entailed. The motion should nevertheless be granted, if it appears that claimant's title to the appropriated lands before appropriation is reasonably questionable.

By letters patent dated April 17, 1850, duly recorded, the People of the State of New York conveyed the lands in question to George Bradley and David Underwood, who were copartners in business, and there appears of record no conveyance from either said Bradley or said Underwood, or from the heirs, executors or devisees of either. It appears of record that on January 6, 1886, one Rebecca Wood and James R. Wood, her husband, executed and delivered a warranty deed, which purported to convey the lands, except a small portion thereof in the northeast corner, said in this deed to have been previously sold to another, to Mary Lamphier, since which time, through seven mesne conveyances, four of which were warranty deeds, the lands conveyed by the Wood deed have been conveyed to John W. Olmstead, the claimant herein; his deed bearing date April 11, 1904, and having been duly recorded.

Claimant asserts title also to the portion of the lot not conveyed by the Wood deed, through other conveyances, the situation with respect to which is not essentially different from that affecting the title to the major portion of the lot conveyed by the Wood deed. At the time claimant received his deed, in 1904, he was not, nor has he since at any time been, a resident of the town in which the land lies, nor is there any evidence that he ever occupied the land or any part thereof.

The taxes levied and assessed against the whole lot for the years 1909 to 1913, inclusive, having remained unpaid, in the year 1915 the State Comptroller, pursuant to the provisions of the Tax Law, sold the whole lot at tax sale to the claimant herein, and in due course executed and delivered to the claimant his deed thereof. So

far as appears, all proceedings leading up to and culminating in the tax sale, including the assessments and the levying of the taxes, were regular, and the sale was a valid sale. The contrary is not urged.

The sole claim made by the Attorney-General is that because in 1904 claimant had obtained a deed of the land, which, however, the State urges conveyed no title because of the outstanding record title in Bradley and Underwood, claimant was disqualified from purchasing at the tax sale, and may claim no benefit from his tax deed, except as a mere receipt for the payment of the delinquent taxes. In support of that claim, the Attorney-General urges that, as claimant held a deed of the land at the time the assessments were made and the taxes were levied, he owed a duty to the government to pay the taxes, and that his payment of the purchase price upon the tax sale was no more than a belated discharge of that duty, a delayed payment of the taxes, which will not operate to build up or improve in any way his title to the land.

The Attorney-General has cited many cases, mostly from other jurisdictions than our own, in which language is used to the effect that one who owes the legal duty or obligation to pay taxes on lands cannot benefit through a tax sale of the lands brought about by his own neglect to pay the taxes in violation of his duty; but an examination of the cited cases reveals that the duty referred to is a duty owed to one whose title would be cut off or diminished by reason of the tax sale.

As to the lands here in question, claimant rested under no duty to pay the taxes. The lands were wild, unoccupied forest lands, lying in a county other than that in which claimant resided. The assessments were not against claimant, but against the land, as they were required by law to be, and gave rise to no obligation or duty of any kind imposed upon claimant in favor of the State or any branch of the State government. The proceedings for the collection of the taxes, including the assessments, the sale and all intermediate steps, were proceedings *in rem* against the lands, and not against claimant.

Certainly if, as the State urges and as appears from the county clerk's records, title to the lands had never gone out of Bradley and Underwood, or their executors, heirs or devisees, the deed which claimant obtained in 1904 effectually conveyed to him no interest in the lands, and in legal right left him in the same position as an utter stranger to the title and to the tax proceedings. He was as free to become a purchaser in the tax sale as a stranger, and the Comptroller's deed effectually cut off any title which may have been outstanding in Bradley and Underwood, or the executors, heirs or devisees of either.

One who holds a tax deed as the result of a valid tax sale obtains thereby a good title as against all the world, except one to whom the purchaser owed the duty to pay the tax, or one in such relation to the purchaser, or to the lands, or to both, as that the divesting of his title or interest and the vesting of the whole title in the purchaser by means of the tax sale would amount to an abuse or violation of a fiduciary relation or other breach of good faith.

There is some evidence in the moving papers that the lands had in fact been sold prior to 1864 by Bradley and Underwood to Rebecca Wood and James R. Wood, her husband, the former being the source of such record title as claimant had prior to the tax sale, and that a written contract of sale and purchase had been executed by the parties, whereby it was agreed that a deed would be executed and delivered upon payment in full of the agreed purchase price. There was some evidence of the payment of money on account of the purchase price, but whether all or only a part does not appear, except by an affidavit made by James R. Wood, the husband of Rebecca, which is probably not competent evidence of the fact of such payment. (Civ. Prac. Act, § 347.)

Were it not for the tax deed, it would be eminently appropriate to bring in the Bradley and Underwood heirs, but in view of the tax deed, which seems to be unassailable, no useful purpose will be served by bringing them in, as there is nothing for them to litigate.

The motion is, therefore, denied.

PARSONS, J., concurs.