THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN R. FOOTE and Others, Defendants.

JOHN R. FOOTE and Another, Plaintiffs, *v.* CARRIE ADAMS and Others, Defendants.

JOHN R. FOOTE and Another, Plaintiffs, *v.* CARRIE ADAMS, Defendant.

Supreme Court, Nassau County, September 16, 1931.

*John J. Bennett,* Attorney-General of the State of New York [*Eugene L. Brisach* of counsel].

*Jeremiah Wood* [*Alfred T. Davison* and *James M. Gray* of counsel], for town of Hempstead.

*Charles I. Wood* [*Phillip Huntington* and *Davis S. Hill, Jr.,* of counsel], for town of Oyster Bay.

*Benjamin Kaplan,* for David Bandler.

*Hurley & Southard* [*Eugene R. Hurley* of counsel], for John R. Foote and others.

*Kooperstein & Kooperstein* [*William H. Bisnoff* of counsel], for Grace M. Alling and others.

*Martin E. Halpin,* for George A. Bedell.

*Charles E. Russell,* for George A. Littlejohn, guardian *ad litem* for Evelyn Byrd and others.

*Charles L. Woody,* for Caroline Foote and Mr. Woodruff.

*Louis W. McKernan,* for Moore, Wood and others.

HUMPHREY, J.   By order heretofore made, the foregoing-entitled actions were consolidated, and the issues presented were tried together at an Extraordinary Term called by the Governor for that purpose.

The several actions have for their purpose the determination of the rights of certain heirs of one Captain John Seaman, or their successors in interest, in the properties described in the complaints, or some part thereof.

The State of New York and the defendants town of Hempstead and town of Oyster Bay deny in the pleadings that any Seaman heirs have any interest in any of the properties described in any of the complaints.

At the outset of the trial it was stipulated that this issue be first tried and a finding made thereon before other proceedings were had.   The record of the trial is large, both by way of oral testimony and exhibits, and after the close elaborate briefs and reply briefs were submitted.   These briefs were prepared with painstaking care, and leave nothing further to be said.

Captain John Seaman was a conspicuous figure on Long Island during the last half of the seventeenth century.   He received from the Indians a deed to large tracts of land on the south side of Long Island.   He received from Governor Nichols, in 1666, a patent to the lands covered by the Indian deed.   He was trustee for the town in its transactions with the Governor.   Historians give him an honored place in the settlement of the south side of Long Island. It has been recognized too long to admit of controversy that a tract of land known as " Seaman's Gore " separated the southerly parts of the towns of Hempstead and Oyster Bay.   The State of New York contends that the southerly boundary of the Nichols patent to John Seaman was the Great South bay, and not the Atlantic ocean.   In this respect I am in disagreement with the State.   Where the patent used the language, " on the south with the Sea or Maine Ocean," it seems clear that the words were not used in any restricted sense.   It is not easy to find out what was running in the minds of men more than two hundred years dead.

The best we can do is to review what they said; what they put into writing, and give some reliance on what the historians say of them.

With Captain John Seaman in possession under the Nichols patent, he made an application to Governor Dongan, a successor to Governor Nichols, for a confirmation of his grant from the last-named Governor. What prompted the application can only be surmised, but there is the document itself, and it seems plain to me that it fixed inviolate in John Seaman and his heirs the title to the upland described in the Nichols patent and gave back to the Crown the meadows and waters of the Great South bay and the beach beyond to the main ocean. The most potent element in forcing me to that conclusion is the act of John Seaman himself. He was a large landed proprietor. He had a large family, a widow and thirteen children survived him. He made a will in which he devised and bequeathed with great particularity his lands and his flocks and herds. No mention is made of any of the lands excluded in the Dongan patent. From the time of the Dongan patent the Seaman Gore took on the name " John Seaman's Thousand Acre Patent," and has repeatedly been so referred to in conveyances and other patents.

Arguments have been presented attempting to show that John Seaman never knew of the Dongan patent, but the instrument shows he applied for it and the indorsement shows it was recorded for him in the proper recording office. These present a presumption of delivery. (*Sweetland* v. *Buell*, 164 N. Y. 541, 552.)

There was a Statute of Frauds in effect at the time of the Dongan patent, but it was not binding on the King. Laws were made only for subjects. (*De Lancey* v. *Piepgras*, 138 N. Y. 26, 39.)

Captain John Seaman having treated his property under the Dongan patent as though limiting his ownership in the gore to the thousand acres therein mentioned, it is too late for his heirs to assert for him what he did not claim for himself. (*Beers* v. *Hotchkiss*, 256 N. Y. 41.)

The question of the disputed boundary is reserved for further consideration, as under the stipulation only the rights of the Seaman heirs are to be considered at this time.

Commencing with 1923 and ending in 1926, the disputed lands found a place on the tax records of the town of Hempstead and assessed to " The Heirs of Captain John Seaman." None of the heirs came forward to pay the tax and a sale was had for unpaid taxes.

The assessment for taxation purposes by a municipality does not create a title where none existed. (*Harway Improvement Co.*

v. *Partridge*, 203 App. Div. 174; *City of Mt. Vernon* v. *N. Y., N. H. & H. R. R. Co.*, 232 N. Y. 309; *Consolidated Ice Co.* v. *Mayor*, 166 id. 92.)

The deed given by the defendants Bandler and others to some portions of the premises involved herein should be vacated and discharged of record.

Findings and order may be made in accordance with this memorandum.