RAQUETTE FALLS LAND COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 18742.)

Court of Claims, June 19, 1935.

*George N. Ostrander*, for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Frederick D. Colson, Assistant Attorney-General*, of counsel], for the defendant.

PER CURIAM. This claim was tried before the Hon. JAMES A. PARSONS, one of the judges of this court, who is now ill. We find in the files of the case the transcript of a memorandum dictated by Judge PARSONS prior to his illness. After due consideration of the record and of the briefs submitted by counsel on both sides, we have come to the conclusion that the memorandum correctly sets forth the law which should be applied to the facts in this case and adopt it as the opinion of the court, and in accordance therewith enter the decision of this court and direct that judgment be entered in favor of the claimant in the amount of $800, without interest.

The memorandum prepared by Judge PARSONS follows:

PARSONS, J. On the 23d day of February, 1928, the People of the State of New York, acting through the Conservation Department and in pursuance to the provisions of the Conservation Law, permanently appropriated for public and State park purposes by the service on the claimant of a proper notice of appropriation about 160 acres of land in the town of Horicon, county of Warren. It was commonly known as the Brant Lake tract, Lot No. 58, in said town and county.

The claimant duly filed the claim herein for the value of said tract, alleging that it was the sole owner at the time of the appropriation.

There is no dispute as to the value of the land. It is conceded to be $800.

The dispute arises as to the title of the claimant and as to the power of this court to determine the question of the title of the claimant.

As to the power of this court to determine the same, I believe there can be little question that it has the power to so determine. The court is charged with determining the value and rendering a judgment therefor. In order to do this, it must necessarily determine who the owner is, and in order to do that it must to that extent determine the title.

I believe the clear weight of authority is to this effect. (*People ex rel. Palmer* v. *Travis*, 223 N. Y. 150; Court of Claims Act [Laws of 1921, chap. 922], § 12; *People ex rel. Swift* v. *Luce*, 204 N. Y. 478; *First Construction Company of Brooklyn* v. *State of New York*, 221 id. 295; Conservation Law, § 59.)

I am, therefore, of the opinion that to the extent necessary to determine who is entitled to an award herein the court has the power to determine the title.

There is no substantial dispute as to the facts in respect to the title. They are all matters of record. The dispute arises as to what these facts establish.

The claimant is the only party before this court. No other party has made any claim to this court or otherwise. It developed in the course of these proceedings that possibly some other parties might have an interest in this land and they were, under the provisions of section 20 of the Court of Claims Act, duly served with notice of the proceedings. None of them filed or made any claim and they are, therefore, barred from making such claim. (Court of Claims Act, § 20, as amd. by Laws of 1928, chap. 830.)

The other question is: Had the claimant title at the time of the appropriation? I think it had. The land appropriated was concededly wild, vacant, unoccupied forest land and was so during all the time.

The State's position is somewhat unique. It claims that the tax sales for 1910 and 1915 were void not only by reason of the illegality of the assessments for the years covered by these sales but that the claimant was bound to pay the taxes for these years as it was the owner of the lands at the time.

I am of the opinion that the assessment was valid. (*People* v. *Hagadorn*, 104 N. Y. 516.)

As to the duty to pay these taxes, the State takes the position that the claimant in purchasing at the tax sale was only paying its taxes, and, therefore, got no better title than it already had.

In my opinion, the same rule as to the personal obligation to pay taxes applicable to lands occupied and for which the resident owner is deriving the use and benefit does not apply to vacant unoccupied land assessed to a non-resident owner. This subject was quite thoroughly discussed by this court and this conclusion arrived at in the case of *Olmstead* v. *State* (124 Misc. 684), and I see no reason for changing the position, especially when the other authorities are consulted. (See *Smith* v. *Russell*, 172 App. Div. 793; *Witherhead* v. *Ort*, 223 id. 626; Tax Law, §§ 9, 55-a.)

Assuming that I am wrong in this position, let us see how much of the title, if any, the claimant had previous to the purchase at the tax sales of 1910 and 1915. In my opinion, it had no title. Such alleged title was based largely on tax sales for unpaid taxes between 1871 and 1905. The State offered in evidence the minutes of the proceedings of the Warren county board of supervisors for the years involving the unpaid taxes included in these sales, and they show in many instances that there was no compliance with the law requiring the board of supervisors to pass a resolution extending the taxes but that such duty was delegated to the supervisor of the town or the clerk of the board of supervisors.

That the board of supervisors must pass a resolution extending the taxes seems to be beyond question. (*People* v. *Hagadorn*, 104 N. Y. 516; *People* v. *Inman*, 197 id. 200; *People* v. *Ladew*, 237 id. 413.) A tax levied otherwise than in pursuance to such a resolution is void and any sale made thereunder or any deed given as a result of such a sale is equally void.

What seems to be the leading case in this State as to the effect of a void act is *Matter of Killan* (172 N. Y. 547, and authorities there cited). In this case the court says (at p. 553) in applying the rule to a void judgment: " From it no rights can be obtained. Being worthless in itself all proceedings founded upon it are equally worthless. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void." Therefore, in my opinion, any act based on the void levy for these years was

equally void and the purchaser at any sale founded on such levies acquired no title. It must follow that the alleged title of the claimant and its predecessors in title based on these deeds was no title at all and the title obtained by the claimant as the result of the tax sales of 1910 and 1915 is no wise tainted with any rule that the claimant was bound as owner to pay the taxes on which these sales were founded even if such rule can apply to lands such as the lands in question.

I am of the opinion, therefore,

*First.* That this court has power to determine the title of these lands sufficient for these proceedings.

*Second.* That the proceedings taken herein under section 20 are a bar to any claim other than that of the claimant.

*Third.* That the claimant was not legally bound to pay the taxes for the years covered by the tax sales of 1910 and 1915 as it had at the time the taxes were levied, out of which said sales grew, no title to the land in question.

*Fourth.* That the claim made by the claimant herein is founded on title obtained by it at the tax sales of 1910 and 1915 and is valid.

*Fifth.* That the claimant is entitled to recover the value of the lands appropriated.

Present — RYAN and BARRETT, JJ.