Hugh S. Coyle, J.
This is an action tried before this court without a jury. The action is for a declaratory judgment wherein plaintiff, Gezina Bingham, as executrix of the estate of David Bingham, deceased, seeks an adjudication of the rights and liabilities of the parties arising out of an agreement dated February 23,1955, to which plaintiff’s decedent, David Bingham, Town of Greenburgh and Crossroads Farms, Inc., were parties.
Prior to January 21, 1955, David Bingham and Crossroads Farms, Inc., owned adjacent parcels of land which they intended to improve and develop by the construction of one-family houses. They petitioned the Town of Greenburgh to install streets, sewers and water mains in and upon the premises. On or about February 8, 1955, the town passed a resolution declaring it to be in the public interest to have the aforesaid improvements made provided that the town was assured that the assessments levied on the properties benefited by the improvements would be paid. In order to comply with the resolution of the Town Board, the town, Crossroads and Bingham entered into an agreement dated February 23, 1955, which provided, generally, as follows:
1. The town would construct the streets, sewers and water mains.
*66 2. Bingham would pay for the assessments levied against his property and Crossroads would pay for the assessments levied against its property.
3. Crossroads would obtain a commitment from a lending institution which would make the mortgage loans on the houses to be constructed by Crossroads, to the effect that the sum of $1,500 would be withheld by said lending institution out of the last payment on each loan and held in trust by it for the payment of the assessment relating to the improvements which would be levied by the town against the property covered by each mortgage loan.
4. Bingham guaranteed that if the assessments levied against Crossroads’ property were not paid, he would pay them provided that: “ simultaneously with such payment by Bingham, the Town will assign to Bingham all its right, title and interest in and to the lien, against the allocable property, of the assessment thus paid for, together with such other documents as may be necessary to vest in Bingham the right to foreclose such lien and to recover the amount paid by him for the assessments from the property affected by it ’ ’.
5. As security for his guarantee, Bingham gave the town a first mortgage on his property with the right to substitute other adequate security in place of the mortgage.
The agreement was duly recorded in the office of the Clerk of the County of Westchester (Division of Land Records) on March 24, 1955.
Thereafter, Crossroads commenced construction of homes upon its property, and the town proceeded to construct the improvements. Upon the sale of each house, the Ninth Federal Savings and Loan Association, as mortgagee, withheld from the final payment due on the loan the sum of $1,500 to pay the assessments. The total withheld was $102,000.
Prior to any construction on the property owned by David Bingham, he died and the premises were sold to the Archbishopric of New York. In order to deliver a clear title, plaintiff agreed with the town to deposit the sum of $78,290.33 in escrow with the County Trust Company and the town agreed to satisfy the mortgage which it had on the Bingham property.
In May of 1957 the town confirmed an assessment roll in the amount of $215,000.13 and, subsequently, received on account thereof $102,000 from the Ninth Federal Savings & Loan Association; $47,938.41 from the Archbishopric of New York; and $2,099.82 from one Elsie Jeremiah, leaving a balance, according to the town, of $62,961.90. In accordance with the terms of the escrow agreement, after the payment by the Ninth Federal, *67 plaintiff was entitled to repayment of the sum of $10,290.33; thus, there is presently on deposit with the County Trust Company the sum of $68,000.
The defendant Town of Greenburgh has counterclaimed against the plaintiff and cross-claimed against Crossroads Farms, Inc., and Charles A. Newbergh, asking, among other things, that the court find that Crossroads Farms, Inc., and the estate of David Bingham presently owe the town $62,961.90 for the assessments levied and unpaid and for judgment in the aforesaid sum against the defendant Newbergh.
The individual defendants (hereinafter called ‘ ‘ home owners ”) have asserted four counterclaims and five cross claims against various codefendants. In substance they ask that the plaintiff and the defendants Crossroads and Newbergh be declared liable for the unpaid assessments and that the town be enjoined from collecting the assessments from the home owners. The defendants home owners seek damages in various amounts and also ask for judgment over against the plaintiff and the defendants Crossroads and Newbergh if it should be found that the home owners are liable for the unpaid assessments.
The defendants Crossroads and Newbergh have counterclaimed and ask that the assessments be declared invalid.
In addition to the above defendants, Boceo Di Pietro and Belmont Excavators, Inc., interposed cross claims. Their actions were severed at the time of trial and decision reserved on the motions of all other parties to dismiss the cross claims. The claimants’ cross claim consists of a single cause of action against Ninth Federal, the town and Crossroads Farms. Prior to the trial of this action, Ninth Federal moved for summary judgment and claimants opposed the motion. Mr. Justice Fanelli, sitting in Special Term of this court, after due consideration granted the motion and dismissed the cross claim. That decision has not been appealed and, thus, constitutes the law of the case and is binding upon the cross claimants. It precludes Di Pietro and Belmont from now relitigating the identical issues decided by Judge Fangeli (Walker v. Gerli, 257 App. Div. 249; Flanders v. Murray, 177 Misc. 239; Good Health Dairy Prods. Corp. v. Emery, 275 N. Y. 14; Israel v. Wood Dolson Co., 1 N Y 2d 116). However, even if this were not the law in the case, the court would be compelled to grant the motion to dismiss for the same reasons advanced by Judge Fanelli.
For the most part the facts in issue were stipulated to by and between the parties prior to trial in the form of a written agreed *68 statement of facts. Upon the trial it developed, and this court finds, that the amount actually involved in this controversy is $29,969.52. Although the claimed deficiency is $62,961.90, the town admits that it never billed or tried to collect its assessments from those persons who purchased homes from FPMS Building Corp., as contrasted to those persons who purchased from Crossroads, designated herein as defendant home owners. These people, whose properties are assessed for a total amount of $26,692.92, bought their homes long after the assessments were levied and were matter of record, after this action was commenced, and they took title to their property with full knowledge of the assessments. These assessments can be collected by the town at any time. In addition the town assessed the three model homes built by Crossroads for $6,299.46. The town has never attempted to collect these assessments either, and they are also collectible at any time. Subtracting the total of the above amounts, namely, $32,992.38 from $62,961.90 leaves a balance of $29,969.52. This is the amount of the deficiency on the assessments levied against the defendant home owners, and the only amount really in dispute in this action.
It is the contention of the plaintiff that she is willing to pay the alleged deficiencies in the assessments if the town can assign to her valid tax liens which she can foreclose against the properties affected thereby and thus recover the moneys paid by her to the town. On the other hand, should the court hold that the town cannot assign valid tax liens to the plaintiff, she is entitled to a return of the fund being held in escrow.
Crossroads Farms, Inc., and Charles Newbergh claim that they have no further obligation to the town because the town improperly levied the assessments against the property which it formerly owned. This contention is disputed by the town.
The contention of the town is that the agreement on the part of the town to assign tax liens on the Crossroads’ property upon payment by Bingham of the Crossroads’ obligation is in complete contravention of the resolutions (of the town to make the improvements) and is, therefore, invalid, but that this invalidity in no way disturbs that part of the agreement which obligates Bingham to pay.
The position of the home owners is not unlike that of the town. They claim that the town’s agreement to deliver tax liens to the plaintiff in return for her payment of the deficiencies is invalid because it is illegal for the town to transfer tax liens in this manner. In spite of this claimed illegality they contend that the agreement is good in part and bad in part and, *69 therefore, the plaintiff is still required to pay the deficiencies even though she would not receive the tax liens.
Thus, the entire case presents two issues: first, can the town transfer valid tax liens, and second, if it cannot, then is plaintiff liable for the payment of the deficiencies.
The rights of a governmental body to impose taxes and assessments, to create liens and to enforce and foreclose said liens are creatures of statute. The applicable statutory enactments are the sole source of these rights. In order for there to be a valid transfer of a tax lien, said transfer must comply with the applicable statutory requirements (McFarlane v. City of Brooklyn, 122 N. Y. 585; Bell v. City of N. Y., 66 App. Div. 578). The creation of the tax obligation is not an ordinary debt arising out of a contract, express or implied, but is an obligation which is a result of the exercise of governmental functions. The specifically detailed manner by which tax obligations are enforced and collected is established not only for the protection and benefit of the State but for the protection and benefit of the taxpayer as well. To permit a departure from said procedure by vesting in a private individual the right to collect the taxes, without complying with the statutory requirements, as would be the case if the town could assign the liens to Bingham, not only results in a delegation of sovereign powers to an individual but also results in depriving the individual taxpayer of the benefits and protections of the procedures enacted by statute. In the instant case, article 16 of the Administrative Code of Westchester County (L. 1948, ch. 852, as amd.) establishes the procedure to be followed in the enforcement and transfer of tax liens. In substance, the statutory requirements provide for a “ sale ” of tax liens, which sale must be public in nature and must comply with the various provisions relating to advertising, public bids, etc. The contractual provisions relating to the assignment of tax liens to Bingham do not comply with the statutory requirements and it must, therefore, be held that said provisions are invalid and unenforcible.
Once having decided that the agreement insofar as the transfer of the tax liens is concerned is invalid and unenforcible, we come to a consideration of whether or not the plaintiff must pay the deficiencies. The agreement between Bingham and the town is a bilateral contract. Bingham agreed to pay the assessments in the event of Crossroads’ default, provided that the town assigned to him the appropriate tax liens. Performance by the town is a condition precedent to plaintiff’s duty to perform. If the town cannot perform its obligation, it follows that *70 plaintiff is not obligated to perform. The fact that one of the parties to the agreement is the town is of no consequence. Municipalities have the same obligations and are subject to the same limitations as other parties to a contract. The town, therefore, cannot claim that the contract is void for the purposes of its obligations while simultaneously arguing that the contract is valid for purposes of plaintiff’s counterpromise. If the town cannot legally perform the contract, then plaintiff is entitled to be relieved of her obligations under the agreement (Lindlots Realty Corp. v. County of Suffolk, 278 N. Y. 45; MacMurray v. City of Long Beach, 292 N. Y. 286). Bingham’s promise to pay the deficiencies is contained in the same sentence of the agreement in which the town promised to deliver the liens. Although it has been argued to the contrary, this court believes that the sole consideration for Bingham’s promise to pay the deficiencies was the town’s unequivocal promise “simultaneously” to assign the tax liens.
It is, therefore, the judgment of this court that:
1. The provisions in paragraph 4 of the agreement dated February 23, 1955 with respect to the transfer of tax liens is invalid and unenforcible.
2. The plaintiff is entitled to the return of the escrow fund held by the County Trust Company with such interest as may have accrued thereon.
3. The amount of the deficiency on the assessments levied against the defendant home owners is $29,969.52.
4. Crossroads Farms, Inc., and Charles A. Newbergh are liable to the town for the afore-mentioned deficiencies.
5. If it is unable to collect the deficiencies from Crossroads Farms, Inc., and Charles A. Newbergh, the town may collect the same from the home owners in relation to their interest therein by collection of the tax liens against their property.
6. The tax liens in question are valid liens and may be collected by the town.
7. The counterclaim of defendants, Crossroads and Newbergh, are dismissed.
8. The counterclaim of the town against the plaintiff is likewise dismissed.
9. The cross claims of the defendants Boceo Di Pietro and Belmont Excavators, Inc., are hereby dismissed.
10. The counterclaims and cross claims of the defendant home owners are dismissed.