John P. Donohoe, J.
This motion for an order under CPLR 3212 striking the answer of the defendant and granting summary judgment to the plaintiffs is denied. Summary judgment dismissing the complaint is- granted to the defendant.
This is an action brought by the purchasers of homes from a real estate developer in the Town of G-reenburgh, Westchester County, against a title insurance company, based on the company’s failure to include in its exception to policies of title insurance an agreement relating to assessments for street, water and sewer improvements.
On February 23, 1955, a corporation named Cross Roads Farms, Inc., entered into a written agreement with the Town of Greenburgh under which it was agreed that the town would improve the streets and highways and construct lateral sewers and water mains in a subdivision called Cross Roads Farms. The corporation in turn agreed that it would pay all of the assessments therefor in a single payment when due. A third party, one David Bingham, joined in the agreement, guaranteeing that *601 lie would pay the assessments if the corporation did not. Certain security arrangements were provided in the agreement, but they are not relevant to this consideration. Suffice it to say that the improvements were made, the security arrangements failed, Bingham was sued unsuccessfully by the town, and the ultimate burden of payment has fallen upon the plaintiffs, who are the individual homeowners. The agreement was recorded in the Westchester County Clerk’s office on March 24,1955.
After the town had made the specified improvements, it assessed the cost upon the properties so improved. The special assessment roll was adopted by the Town Board on May 28, 1957, confirmed on June 28,1957 and reported by the Receiver of Taxes as uncollected in the amount of $169,061 on July 9, 1957. The first installment payable by the owners became due on April 1,1963. A thorough reading of the papers fails to shed any light on the reason for delay between assessment and collection. It could be surmised that steps taken against the guarantors in lieu of the levies which would normally be applicable account for it.
Subsequently, Cross Roads Farms, Inc., conveyed the premises in question to a corporation called FPMS Building Corp., which, in turn, sold homes to each of the plaintiffs in this case, on dates between September 19, 1958 and October 30, 1958.
Each of the plaintiffs obtained a policy of title insurance from the defendant. A sample of the contract of insurance and the exception sheet has been furnished the court, and these documents form a portion of the basis of decision.
A typical exception sheet contained the following entry:
‘1 road, water and sewer improvement tax
‘1 Omit Lot 12............ $1,649.06 Open
Not a Lien Lot 13............ $2,099.82 Open
“these amounts will be divided into annual installments and collected each year with the state, county and town tax starting 4/1/59 and ending the year when the last bond issue is due and payable.”
It contained no reference to the agreement of February 23, 1955.
The title insurance policy itself contained the following-pertinent provisions:
“ Schedule B. The following * * * are excepted from the coverage of this policy:
‘ ‘ 1. Defects or encumbrances arising or becoming a lien after the date of this policy, except as herein provided.”
*602 Upon the closing of title, each of the the plaintiffs signed a letter in the following form:
, 1968
FPMS Building Corp.
60 East Hartsdale Avenue
Hartsdale, New York
Re: Purchase from FPMS Building Corp.
Gentlemen:
We have today closed title with you and accepted a deed to our new home. We understand that the Town of Greenburgh installed the road and water and sewers in front of said premises and that the Town of Greenburgh has paid for such installation.
We have been informed that the Town of Greenburgh has assessed these premises for the costs of putting in these improvements and that we will have to make an annual payment to the Town of Greenburgh over a number of years, which amount will be included with our annual tax bill which we will have to pay, and we will not look to you for any reimbursement.
Very truly yours,
(Signature)
IN PRESENCE OF -
(Signature)
-- Purchaser
Attorney for Purchaser
The plaintiffs’ contention, as their attorney states in his memorandum, is as follows: ‘ ‘ The question presented to this Court is whether (the agreement of February 23, 1965) constituted an encumbrance against the properties of the plaintiffs and if so did the failure of the defendant to take an exception to the same in its title policies make the defendant liable to the plaintiffs for the resulting assessments and liens against their properties even though payment of the same became due after the date of the respective policies.”
The agreement of February 23, 1955 did not create or impose any liability. It was in substance an inducement to the Town Board to make improvements upon written assurance of prompt payment. The liability and the liens were imposed by law. Section 231 of the Town Law provides for the imposition of the cost of improvement by special assessment. Sections 240, 241 and 242 provide the means of assessment and collection. It is of particular interest that the final paragraph of section 242 says -. 1 ‘ Whenever assessments shall be payable in installments, each installment thereof shall become a lien at and only from the time the same becomes payable upon the parcel of real estate upon which the same shall be assessed”. In this action, it is asserted without contradiction that the liens did not become payable until April 1,1963.
*603 In a related matter, wherein the guarantor, Bingham, sought to enforce the provision for assignment of assessments and tax liens to him under the agreement here considered, the court (Coyle, J.) said: “ The rights of a governmental body to impose taxes and assessments, to create liens and to enforce and foreclose said liens are creatures of statute. The applicable statutory enactments are the sole source of these rights.” (Bingham v. Town of Greenburgh, 30 Misc 2d 64, 69.)
Thus, it is concluded that the agreement of February 23, 1965 created or imposed no obligation upon the plaintiffs.
The specific omission of the exception of the assessments on the title report was in correct interpretation of the law in September and October, 1958, for they were not then liens within the meaning of section 242 of the Town Law. (Mayers v. Van Schaick, 268 N. Y. 320; Volpe v. Incognito, 23 Misc 2d 236.)
There is no distinction in this regard between liens and incumbrances, so that no purpose is to be served by straining to seek to interpret the February, 1955 agreement as an incumbrance, as urged by the plaintiffs, rather than as a lien. (Metropolitan Life Ins. Co. v. Union Trust Co., 283 N. Y. 33; Doonan v. Killilea, 222 N. Y. 399.)
The plaintiffs* cause of action fails, under the provision of the insurance contracts quoted above, because the liens arose after the dates of the policies.
The plaintiffs assert as additional arguments in support of their position that they were misled by the failure, of the title insurance company to report the existence of the 1958 agreement. The argument is not valid, first, because the plaintiffs were given notice, and had actual knowledge of the assessments themselves, through the exception sheet which contained reference to the special assessments and through the letter which they signed agreeing with the seller that they would pay them. The defendant argues that the letter agreement exculpates it from liability under a clause of the insurance contract that says:
“ Schedule B. The following * * * are excepted from the coverage of this policy. * * *
“4. Judgments against the insured or estates, interests, defects, objections, liens or encumbrances created, suffered, assumed or agreed to, by or with the privity of the insured.”
The letter agreement, as pointed out above with respect to the February, 1955 agreement, did not create the liability or the lien. It was a collateral agreement whose effect was to hold the seller free from liability for such liens and assessments as might attach. Even if the agreement had been made with the primary obligee, the Town of Greenburgh, it is doubtful, in the absence *604 of the compromise of a dispute, whether such agreement would be deemed to create liability and provide ground for the lien.
The argument is invalid for a further reason. It is argued that if the plaintiffs had known of the agreement, rather than only of the assessments, they might have refused to pay for the improvements and insisted upon the withholding of certain mortgage funds which the February, 1956 agreement provided to be withheld to pay for the improvements. Thus, the plaintiffs assert that the defendant had a duty to disclose, not only defects, liens and incumbrances which might adversely affect title, but other matters of record as well, from which policyholders might be informed of affirmative rights. The law is to the contrary. ‘ ‘ A title insurance policy is much in the nature of a covenant of warranty or a covenant against encumbrances ”. (Empire Development Co. v. Title Guar. & Trust Co., 225 N. Y. 53, 61.)
Inasmuch as it has already been determined that the instrument in question did not create an incumbrance, no obligation existed upon the part of the defendant to call it to the attention of the plaintiffs.