Leon D. Lazer, J.
An abstruse statute, sadly in need of reform, has combined with archaic judicial doctrine to produce (with artful human assistance) a claim of compensation for 10.24 acres of real estate by a putative owner whose deed derives from a self-created tax delinquency. While the arena is a condemnation trial, it is the validity of claimant’s tax deed which is the issue. The condemning authority, the Town of Brook-haven (“Brookhaven”), asserts that claimant’s deed begets him no title. Nevertheless, the claimant (Jack Weissman) relies *501 almost entirely upon the deed, but also resists the town’s challenge by attacking its right to question the legitimacy of the acts of its own assessor.
THE FACTS
In 1953, claimant bid at a .Suffolk County tax sale and, inter alia, acquired a tax deed to two parcels consisting of one and seven acres respectively. Although the grantee in claimant’s deed was Birchwood Holding Corporation, the larger parcel was ultimately assessed to Vane Realty Corp. (“Vane”) and the other to Caldwell Realty Inc. (“Caldwell”), corporations wholly owned by Mr. Weissman. Both plots were described in the 1953 tax deed and thereafter on town assessment rolls as being bounded on one side by an unused spur of the Long Island Railroad. This .railroad spur ultimately was acquired, for use as a county road by Suffolk County based on a 1953 condemnation resolution. Claimant’s corporations paid taxes on the two parcels for the next 12 years, but, despite his employment of “ talented people ” to assist him he never was able to locate the two properties because only the railroad .spur was identifiable as a boundary. Expert trial testimony confirmed the fact that it was impossible to locate either parcel described in claimant’s 1953 deed.
In 1965, Mr. Weissman apparently located and surveyed 10.24 acres of land fronting on the former railroad spur. It is undisputed that at the time of this survey, claimant (in the words of his attorney) was a “stranger” to the property without a “ smidgen ” of title. The 10.24'acres (the “ subject property ”) was not listed on the assessment roll of Brookhaven for the year 1965-1966 and the true owner at that time still remains unknown. Mr. Weissman furnished the survey to the Town Assessor who wrote to the Deputy ¡County Treasurer (the “Deputy Treasurer”) on January 20, 1966 .stating that the seven-acre Vane parcel and the one-acre Caldwell parcel were actually part of the 10.24 acres. The Deputy Treasurer wrote to Mr. Weissman on March 15, 1966 .(after a meeting with him) stating that he could not cancel the 1965-1966 assessments for the two parcels because they were described in his deed. He did suggest, however, that Mr. Weissman might obtain “ clear title ” to the-10.24 acres by having the assessor place it on the 1966-1967 assessment roll, letting the taxes go unpaid for that year, purchasing the tax lien for those unpaid taxes, and acquiring a tax deed after the expiration of the statutory three-year wait.
Neither the assessor nor the claimant waited — the property was added to the Brookhaven tax roll for 1965-1966 in the name *502 of Caldwell Realty Inc.— and, by failing to pay taxes on it, Mr. Weissman acquired a tax lien and then a deed from the County Treasurer. Although the validity of claimant’s deed rests on statutory compliance, that compliance is also dependent on the physical facts which relate to the location of the land and which must be first considered.
THE LOCATION OF THE LAND
.The 10.24 acres and claimant’s original seven-acre parcel are mutually exclusive. The former is bounded on the north and east by proposed county road 91 while the latter ,is described as bounded by the railroad spur (which is the proposed county road) on the west. At best the properties are on opposite sides of the proposed .road. Mr. Weissman’s one-acTe parcel is on the same side of1 the road as the subject property, but there is nothing probative in the record to show that it is part of the 10.24 acres. The three descriptions therefore cover three separate and distinct pieces of land.
THE PROCEDURES
Under the Suffolk ¡County Tax Act (“ SCTA ”) (L. 1920, ch. 311, as amd.) the “ status ” date for the 1965-1966 Brookhaven assessment roll was 'June 1, 1965 (SCTA, § 5), the final filing date was September 1, 1965 (SCTA, § 6) and the lien date was December 1,1965 (SCTA, § 13).
On March 28, 1966,13 days after the Deputy Treasurer’s letter stating that claimant’s two assessments could not be canceled on the existing assessment roll, the county Board of Supervisors adopted a resolution ¡(the “resolution”) entitled “To Readjust, Compromise and ¡Grant Refunds and Charge-Backs on Erroneous Assessments ’ ’ relative, inter alia, to the 1965-1966 assessment roll of Brookhaven. The resolution declared that the properties ¡listed in it “ have been erroneously or improperly assessed as appears from the certificate of the Board of Assessors of the respective towns.” The Deputy Tax Receiver of Brookhaven testified that although such assessor’s certificates would necessarily have been filed in his office, none could be found. None were offered at the trial. The court’s invitation to the Assistant Town Attorney to produce the assessor or his records was not acted upon.
Listed in the resolution by individual item number in the town assessment roll were claimant’s one- and seven-acre parcels (the latter shown as eight acres) taxed at $8.03 and $80.29 respectively. These taxes were canceled and refund was *503 authorized. The original tax roll book in evidence shows that these canceled taxes earlier had been paid by claimant’s corporations on December 21, 1965, although there is visible on that roll the results of an abortive attempt to erase the payment data. Remarkably, the items appear on the roll stamped both “ entered in arrears ” and “ ret. [returned] by receiver ”.
The same resolution listed a third parcel under item number 111861 and set forth for it a “ compromise ” tax of $133.81. Item 111861 did not exist in the 1965-1966 assessment roll when filed and the resolution constitutes its official creation. After the adoption of the resolution, the item was added to the 1965-1966 assessment roll in handwriting. The item is assessed to Caldwell Realty Inc. in that book and the description is that of the 10.24 acres in issue. The item as it appears in the book is stamped “ entered in arrears ” for nonpayment of taxes. Caldwell purchased the lien for these unpaid taxes for $167.96 at the county tax lien sale of December 7, 1966 and received from the County Treasurer a certificate of purchase of the lien. After the three-year wait mandated by section 3 of the SCTA had expired* Caldwell assigned its right to a deed to Mr. Weissman, and the County Treasurer issued him a deed on January 12,1970.
It is an interesting footnote to this narrative that the following year’s assessment roll (1966-1967), filed on September 1, 1966, still contained the assessments for the one- and seven-acre parcels although they had been purportedly canceled as erroneous by the earlier resolution. Even more significantly, the 1966-1967 roll did not contain item 111861 or any reference to the 10.24 acres. Thereafter on October 20, 1966 the assessor executed certificates of erroneous assessment covering the two parcels, stating, inter alia, that: ‘ ‘ The above parcel described as non-existant [$ic\ as part of another parcel now assessed as 10 acres. Therefore the above should be cancelled ” (emphasis supplied).
Dutifully the Board of Supervisors adopted a resolution on December 12, 1966, again canceling the taxes on the one- and seven-acre parcels and fixing a tax for the item 111861, the subject property. It was added to the tax roll book again and this time Caldwell paid the taxes on it.
THE PRESUMPTION OF REGULARITY
In his direct case claimant relied principally on the presumption of regularity underlying the tax deed of January, 1970, although other evidence relative to the events recited here was also submitted. The presumption of regularity is statutory; sec *504 tion 53 of the SCTA (as amd. by L. 1967, ch. 26) provides in part that the conveyance of a tax deed shall be ‘ ‘ presumptive evidence ” that the proceedings leading to the sale, and the assessment, were regular and that the presumption shall become conclusive three years after recording of the tax deed. The conclusive presumption is irrelevant to this litigation because title vested in the town on October 27, 1970, only 10 months after the deed was recorded.
Claimant is entitled to rely on the presumptive regularity of his tax deed but the presumption serves only to shift the burden of proof to the party seeking to overthrow the deed (Bunner v. Eastman, 50 Barb. 639). When that party comes forward with proof that the assessment of the tax, or any other portion of the proceedings prior to the conveyance, was not in conformity with statutory provisions, the presumption is rebutted (Whitney v. Thomas, 23 N. Y. 281), it disappears (People ex rel. Wallington Apts. v. Miller, 288 N. Y. 31), and the case becomes one for proof (Matter of Magna v. Hegeman Harris Co., 258 N. Y. 82 [Cardozo, J.]). In a tax title case the tax purchaser must then prove the regularity and validity of the tax proceedings to establish and sustain his title as at common law (85 C. J. S., Taxation, § 963, subd. b, par. [2]).
THE RULE OF STATUTORY COMPLIANCE
Fundamental to the validity of a tax sale is substantial compliance with law in all proceedings of which the sale was the culmination (Werking v. Amity Estates, 2 N Y 2d 43, cert. den. 353 U. S. 933, rehearing den. 353 U. S. 989; Westfall v. Preston, 49 N. Y. 349; Van Rensselaer v. Witbeck, 7 N. Y. 517). Tax sales are made exclusively under statutory power. Cooley has written that the officer who makes the sale sells something he does not own, and which he can have no authority to sell except after certain steps which precede his action, and which, under the law, are conditions to his authority. “ [I]f these fail the power is never created. If one of them fails it is as fatal as if all failed ” (Cooley, Taxation [2d ed.], p. 470 [1886]). The specifically detailed manner by which tax obligations are enforced and collected is established for the protection and benefit of both the ¡State and the taxpayer (Bingham v. Town of Greenburgh, 30 Misc 2d 64). Since a tax sale proceeding may divest an owner of his title, it has been held that “ scrupulous ” or “strict” compliance (see Kassam Corp. v. Walsh, 206 Misc. 677, mod. 285 App. Div. 955, affd. 4 N Y 2d 888) with the statutory sections permitting divestiture is required (Erlwein v. *505 Patchogue Homes Corp., 43 Misc 2d 707; see, also, Helterline v. People, 295 N. Y. 245; Saranac Land & Timber Co. v. Roberts, 208 N. Y. 288; Lockwood v. Gehlert, 127 N. Y. 241; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 313). Therefore it is for the tax sale purchaser to preserve the ‘ ‘ muniments ’ ’ of the sale since it may devolve upon him to show that the statutorily prescribed proceedings were pursued with precision by the persons empowered to vest title from another (Wood v. La Rose, 67 Misc 2d 597, revd. on other grounds, 39 A D 2d 469).
THE VALIDITY OF THE ASSESSMENT
Claimant’s title is only as good as the assessment from wfiich it derived, for a valid assessment is essential to a valid tax lien (Jackson v. Smith, 153 App. Div. 724, affd. 213 N. Y. 630). The power to assess property for taxes is wholly statutory (National Bank of Chemung v. City of Elmira, 53 N. Y. 49) and the assessment itself does not create a title where none existed (Harway Improvement Co. v. Partridge, 203 App. Div. 174, affd. 236 N. Y. 563; City of Mt. Vernon v. New York, New Haven & Hartford R. R. Co., 232 N. Y. 309; People v. Foote, 141 Misc. 409, affd. 242 App. Div. 162). An assessment made without jurisdiction is void (Whitney v. Thomas, 23 N. Y. 281, supra) and if an assessor’s jurisdiction to act depends upon the existence of a fact which he erroneously assumes to exist, his act is void and it may be attacked collaterally (National Bank of Chemung v. City of Elmira, supra; see, also, Dunn & Bradstreet v. City of New York, 276 N. Y. 198; Matter of Marion Lodge No. 926, F. & A. M., 178 Misc. 219).
After the filing of his roll or after the expiration of grievance time, an assessor may not change the assessment roll by adding to assessments or making other material changes, for such acts deprive taxpayers of the notice required by statute (People ex rel. Chamberlain v. Forrest, 96 N. Y. 544; Clark v. Norton, 49 N. Y. 243; Matter of Frances K. Powell, Inc. v. Board of Assessors, 53 Misc 2d 594, affd. 30 A D 2d 639). Therefore, even where a statute authorizes an assessor to correct errors, it has been held that the error must be “ clear, apparent and manifest ” from an examination of the assessment roll and without extrinsic evidence (Matter of Wadhams, 249 App. Div. 271).
Correction of errors under the SCTA is limited to specified circumstances (see SCTA, § 30; §§ 66, 76 [as added by L. 1929, ch, 152]) and requires authorization from the Board of Supervisors (now the County Legislature). Only the power to apportion divided property is reserved to the assessor (SCTA, § 29) once the roll is filed.
*506 The elimination of the one- and seven-acre assessments and their purported replacement on the 1965-1966 tax roll by the 10.24-acre assessment did not constitute the correction of an error. Since each of the three parcels was separate and distinct, the description of the 10.24 acres plainly was not a correction of the description of the smaller parcels. Indeed if it was, claimant’s title must fall for a further reason — the taxes on it had been paid and a tax lien against a parcel on which the taxes have been paid is a nullity (Challette, Inc. v. Leeds, 28 A D 2d 717; Middle Is. Land & Water Co. v. Hutner, 259 App. Div. 294). A tax deed based upon such a lien is void and does not even set the Statute of Limitations running (Bryan v. McGurk, 200 N. Y. 332; Zipperer v. Siegel, 27 A D 2d 552; Conklin v. Jablonski, 67 Misc 2d 286).
The subject property did not exist on the 1965-1966 assessment roll when it was filed. Its ultimate appearance on that roll can only be characterized as the addition of omitted property. Omitted property may be added to an assessment roll only where there is a statute which authorizes such addition (84 C. J. S., Taxation, § 508). Claimant’s statutory compliance therefore depends on the existence of such a statute.
The March 28, 1966 resolution of the county Board of Supervisors was adopted pursuant to section 30 of the SCTA (L. 1920, ch. 311, as amd. by L. 1958, ch. 95, § 4) which provides that the board may authorize a compromise by which the County Treasurer can accept “ a lesser sum than the face amount * * * of any tax or assessment” (italics added) by reason of ‘ ‘ over valuation, double assessment, erroneous area or other error, which has not been otherwise corrected ’ ’ due to the excusable neglect of the person assessed where the result is unjust or inequitable. Nothing in the section implies the power to add a new assessment or enlarge an existing one. It is a basic rule that a tax statute must be strictly construed and neither given a wider scope than the language justifies or extended by implication (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, '§ 313). The power to refund money to an aggrieved taxpayer whose property is overassessed, doubly assessed or otherwise afflicted by assessment error, cannot be transformed into the authority to create an entirely new assessment or to enlarge an old one to create a new liability, because the right to correct designated errors cannot be used to correct some other kind of error (Bennett v. City of Buffalo, 17 N. Y. 383). And the lack of any provision for notice and an opportunity to be heard as to such a new tax liability after the assessment roll *507 has been filed constitutes a constitutional bar to the use of section 30 of the SCTA for the addition of omitted property (see Matter of City of New York [801-815 E. New York Ave.], 290 N. Y. 236; People ex rel. Bridgeport Sav. Bank v. Feitner, 191 N. Y. 88; People ex rel. Powell v. Supervisors of Nassau County, 54 Misc. 323; People ex rel. Brooklyn City R. R. Co. v. Board of Assessors of City of Brooklyn, 92 N. Y. 430; Real Property Tax Law, § 554).
Section 66 of the SCTA affords no better statutory authority for the addition of the subject property to the assessment roll as omitted property. The section authorizes cancellation by the Board of Supervisors of any tax made illegal by its method of levy or assessment and empowers it to direct the assessor to ‘ ‘ levy anew ’ ’ the tax or assessment in order to validate it. While the one- and seven-acre assessments were canceled by the March 28, 1966 resolution, they were never levied “ anew ”. Instead a tax was levied anew upon the 10.24 acres simply by adding it to the tax roll without benefit of notice or an opportunity to be heard. Section 66 neither contains a provision for notice to the taxpayer nor was any actual notice afforded to the true or unknown owner either by the resolution or by the assessor. Concerning the addition of omitted property by valid corrective legislation, Cooley has written: “ In the new proceedings, the party concerned will have the opportunity to watch the various steps, and to be heard in review of them, that he has in any case, and he will be precluded by nothing that has taken place in the proceedings which have proved abortive * * * ; and as the new proceedings will give him the same opportunity of being heard that is given in other cases, and will be conducted on principles that operate generally, he has no reasonable ground of complaint.” (Cooley, Taxation [3d ed.], pp. 526, 527; see, also, Clark v. Norton, 49 N. Y. 243, supra.)
Section 76 of the SCTA empowers the county Board of Supervisors to authorize correction of an imperfect description on the assessment roll prior to tax advertisement for tax sale. We do not treat here with a merely imperfect description but with the creation of a new tax liability.
Absent, then, any authority in the SCTA for the addition of omitted property, the answer must be sought elsewhere.
Section 32 of the SCTA provides that “ The tax law [now Real Property Tax Law] shall apply and govern in all matters relating to taxation in Suffolk county not inconsistent with the provisions of this act.” Although in Matter of Gould Realty Co. (284 N. Y. 540), the Court of Appeals held that the tax sale *508 sections of the SOTA were a complete and exclusive system for the collection of taxes by sale in Suffolk County, there is no reason why the omitted property sections of the Real Property Tax Law (“ RPTL ”) should not apply if not inconsistent with the local act (see Great River Realty Corp. v. Davis, 158 N. Y. S. 2d 201).
RPTL 554 provides, inter alia, for the addition of omitted property to an assessment roll by the Board of Supervisors on petition of the assessors, but, unlike sections 30 or 66 of the SCTA, it contains mandatory provisions for notice and hearing. It is thus a proper vehicle for the addition of omitted assessments after filing of a tax roll because it satisfies due process requirements (see Western N. Y. & Pa. Ry. Co. v. City of Buffalo, 176 Misc. 350, affd. 264 App. Div. 832, affd. 290 N. Y. 702; People ex rel. Powell v. Supervisors of Nassau County, 54 Misc. 323, supra).
RPTL 554 is not an exclusive remedy for a Suffolk County assessor who discovers omitted property too late to list it on his current roll. Omitted property for a current year may be added to the following year’s roll under RPTL 550, a remedy suggested in the New York Tel. Co. v. Taylor (64 N. Y. S. 2d 323), where the Westchester County Tax Law provision relating to omitted property, also sans a notice provision, was held an improper statutory basis for the addition of such property once grievance day had passed. Such a procedure will salvage the otherwise vanished taxes for the year of discovery.
Apparent as it may therefore be that the assessment in issue lacks statutory basis, the manner of its appearance on the 1965-1966 roll would in any event invoke the rule that an assessment may be so utterly void as to afford no basis for measures purporting to validate it (see May v. Traphagen, 139 N. Y. 478). Such a void assessment was described in Buffalo & State Line R. R. Co. v. Board of Supervisors of Erie Co. (48 N. Y. 93, 98 [1871]), as follows: “ The lands were not assessed according to the fact, either as the lands of a resident owner or of a nonresident. They were assessed to a third person, who had no ownership or possession, and no connection with them. It was not a mere error of the assessors, but a disregard of the facts of the case. They entered a false judgment, not warranted by facts proven. It could not be called a mistake of law or fact, such as the assessors, acting as quasi judicial officers, might honestly make. It was simply an assessment, without the slightest color to warrant or authorize it. ’ ’
*509 Claimant’s presumption of regularity has disappeared and he has submitted no other proof of title — for good reason — he has no title. Having begún as a stranger, he must now he remitted to the same status.
THE ESTOPPEL THEORY
Thus driven to his last defense, claimant asserts the doctrine of estoppel — that the town may not impeach its own assessor. It is settled however that a municipality is not estopped from claiming that an act performed by it is ultra vires (Moore v. Mayor, 73 N. Y. 238) and Brookhaven may assail not only the acts of its assessor but also the resolution of the county Board of Supervisors on the ground that it is unconstitutional or void and by showing that the facts on which it depends for validity do not exist (see Solow v. City of New York, 25 A D 2d 442, affd. 20 N Y 2d 960). The general tenor of New York decisions is against applying the doctrine of waiver or estoppel in tax matters (Matter of Hersch v. Stroup, 19 A D 2d 664, mot. for lv. to app. den. 13 N Y 2d 597; 21 N. Y. Jur., Estoppel, § 78) and it is a general rule that a municipality cannot be estopped by the unauthorized or wrongful acts of its officers or agents (Matter of Hersch v. Stroup, supra; Parsons v. Village of Dannemora, 275 App. Div. 738; 21 N. Y. Jur., Estoppel, § 81). The party who invokes the estoppel doctrine must prove that he acted in good faith (Chast Realty Corp. v. Frost, 198 Misc. 814), and here there is no such proof. There can be no application of the principle where both parties possess equal information and are fully aware of the real situation (World of Food v. New York World’s Fair 1964-65 Corp., 22 A D 2d 278). Mr. Weissman knew the subject property was not his own — if he induced the assessor to add it to the assessment roll without disclosing that fact the risk was his own. If the assessor knew of the lack of title, they shared the risk. Upon receipt of the Deputy Treasurer’s letter telling him to wait, claimant had full notice of the peril of any other course. He is patently ineligible to invoke estoppel in aid of his cause.
THE DOCTRINE OF THE DELINQUENT PURCHASER
It is a fundamental principle of tax title jurisprudence that an owner of land who defaults in the payment of his taxes and repurchases his land at a tax sale does not thereby acquire any right or title to the property better than that which he had previously (Eisenhut v. Marion De Vries, Inc., 150 Misc. 804, affd. 243 App. Div. 539). The rationale of the rule is that one *510 who is under a legal or moral duty to pay taxes cannot acquire better title by refusing to do so and thereafter purchasing his land at a tax sale (Winter v. City Council of Montgomery, 101 Ala. 649). Such a purchase either in person or indirectly through the agency of another must be regarded as the payment of delinquent taxes (Garvey v. Byram, 18 Cal. 2d 279) or a mere redemption (Findley v. Tyler, 227 Ark. 663) which does not add to or strengthen his title (Hadlock v. Benjamin Drainage Dist., 89 Utah 94). This sound principle has been undermined in New York by the unfortunate exception enunciated in Olmstead v. State of New York (124 Misc. 684 [1925]). There vacant land was assessed to a nonresident who was a “ stranger ” to title under a statute which imposed no personal tax liability upon nonresidents. The tax purchaser was, of course, the very stranger to whom the property was assessed. Holding that he had no duty to pay the taxes by which the tax lien had been created, the Court of Claims carved out New York’s exception to the general rule against betterment of title by tax delinquent property owners by ruling that any other outstanding title was cut off by the tax deed. The rule was approved in Raquette Falls Land Co. v. State of New York (156 Misc. 227, affd. 247 App. Div. 837).
Claimant’s clear reliance on Olmstead is demonstrated by his candid admission that he was a “ stranger ” to the title to the 10.24 acres. The incongruity of the doctrine is illustrated by the fact that if the true owner had appeared upon the scene and purchased the tax lien he could not have bettered his title.
Elimination of the Olmstead exception need not rest on reasoning which would seek to create a duty to the public to pay taxes (see note, 46 Yale L. J. 334; Osborne, Mortgages, p. 308). Any person who asserts an ownership interest in property, whether by inducing an assessor to place his name on the assessment roll or by actual seisin, may not better his title by deliberately or otherwise occasioning a tax delinquency and purchasing the lien. A rule based on the concept that the poorer the owner’s underlying claim to title may be, the stronger his ultimate tax title will be held to be, is unjustly discriminatory and in fact, ludicrous. The results of reliance on the Olmstead principle are graphically at hand. It must be relegated to the category of those judicial doctrines which may have beeti appropriate to a bygone era but which have subsequently become instruments for astute manipulation,
*511 CONCLUSION
Before he may he compensated for his property, a claimant must prove his title (see Suffolk County Improvement Act, §§ 44, 45 [L. 1927, ch. 190, as amd. by L. 1939, ch. 276]); 2 Nichols, Eminent Domain [3d ed.], § 5.2, subd. [3]). If theré is reasonable doubt of the validity of title or if there is a fair probability of “ vexatious litigation,” the title is unmarketable (Kassam Corp. v. Walsh, 206 Misc. 677, supra). Payment of compensation to the claimant based on his tax title might face the town with a future and better founded claim. Claimant’s title is unmarketable and it entitles him to no award. Upon completion of valuation hearings in this condemnation proceeding, the sum due from the town to the true owner, whoever and wherever he may be, shall ,be deposited with the County Treasurer in accordance with section 18 of the Suffolk County Improvement Act.
Claimant’s motion for a new trial and ancillary relief is rendered academic by the instant determination and therefore denied.