J. Robert Lynch, J.
On May 3,1962, the petitioners Vivenzio and Butler purchased the Union Fern building at .77-83 Genesee Street in Utica. The petitioner Bersani holds a first and second *572 mortgage on the property. On May 8, 1967, the respondent city took title to the premises, claiming it for unpaid 1962 taxes, a resultant tax sale on May 29, 1963, and a failure thereafter of the petitioners to redeem. There were also tax sales of the property in 1964, 1965, 1966 and 1967 for other unpaid taxes and on each occasion the city bid in the property.
Originally the petitioners commenced a CPLR article 78 proceeding seeking redemption or reconveyance of the property upon payment of back taxes, interest and expenses. This was rendered impossible by the State of New York’s appropriation of the premises. The court nonetheless, upon the agreement of the parties, has heard the issues, since the petitioners’ right to a condemnation award depends on their resolution.
Looming in the background of this controversy and shadowing its issues is a condemnation action that the petitioners have had in progress throughout these years against the city for its appropriation of their property known as the Hotel Hamilton. The petitioners have devoted much of their proof to the allegation that the city agreed that they could defer their payment of the Union Pern taxes until the city paid them what it owed for the Hotel Hamilton.
It is, though, the petitioners’ primary contention that the city’s title to the Union Fern property is invalid for its failure to have observed the requirements of its own city code respecting tax sales and fax sale deeds. Their second contention is operative only in the event that the court finds the city to have observed the niceties of the code. In this event they argue that equity demands a reconveyance since such title as the city has was gained only through assurances by the city’s agents that it would reconvey.
The city denies any defect of title, denies the making of any assurances and argues that even if they were made they cannot legally bind the city.
Because the loss of one’s property is such a harsh penalty for the nonpayment of a tax while the taxing body can always be made whole by the payment of arrears with interest and expenses, the law will deprive an owner of his title only if the provisions of the pertinent statutes have been strictly met and these provisions will be liberally construed in the owner’s favor.
(Clason v. Baldwin, 152 N. Y. 204; Werking v. Amity Estates, 2 N Y 2d 43, cert. den. 353 U. S. 933.) Even a presumption of regularity of a tax title (Utica City Code, § 14-29) will be overcome by proof of irregularity elicited from the mouths of those in the taxing body responsible for it. (Werking v. Amity Estates, supra.)
*573 The Utica City Code provides that property shall he sold for unpaid taxes “at auction to the highest bidder ” (§ 14-24). The city must bid the amount owed it, that is, the taxes in arrears plus interest plus expenses, if no one else makes a bid in at least that amount (§ 14-24). The purchaser at the sale must be given a certificate showing “ the amount paid therefor ” (§ 14^25). The owner of the property may redeem it within a limited time by paying “ the sum mentioned in the certificate ” with interest at 12% per annum (§ 14-26).
The meaning and intention of these provisions are clear. There must be a minimum bid, by the city if by no one else, of the taxes in arrears plus interest and expenses. There is no suggestion that this is the only price to be bid. There is no suggestion that this is not only a minimum but also a preordained maximum. Quite to the contrary — the provisions require auction bidding, the price to go as high as unstifled competition will carry it. The city profits the difference between what is owed it and the highest amount bid. The successful bidder may recover his money from the owner, with 12% interest, if the property is redeemed. Otherwise he becomes the owner at the price paid.
The actuality was a far remove from the code. If its provisions were ever followed at the city tax sales, apparently time and the press of business have now eroded the procedure to a point where there is no semblance to the mandated practice, the intention of which is thereby defeated.
The present City Treasurer and the then Delinquent Tax Clerk have both described the method of sale used in those years with which we are concerned. If no one made a bid, the city would bid the minimum price. If someone present held a certificate on a property from a prior year, that property was not offered to the public at all but was offered to the certificate holder at the minimum price. If there were no certificate holder present from a prior year, the property was offered for sale and all those willing to pay the minimum price cut cards to see who would get the certificate. As the former Delinquent Tax Clerk put it in his deposition, ‘6 If there were four people wanted to buy the certificate, they’d all pick a card from the desk, and the high card — they’d all agreed to go by that procedure. The one that had the high card would get the certificate.”
In short, there was just one price, the amount of the taxes in arrears plus interest and expenses. There was no bidding, no auction, no chance for the city to make a profit. There was no way for one willing to bid highest to prevail other than by *574 drawing the highest card. While this method may have assured the city of more purchasers by keeping their outlay down, it is nonetheless totally contrary to the code. A tax deed based on such a sale is invalid.
It makes no difference that on the May 29, 1963 sale there were no bidders for the Union Fern property other than the city. Who can say how many potential bidders actually present were inhibited by an awareness of the illegality of the procedure? Furthermore, knowledge of this sales method, designed to stifle competition, might well have kept many bidders from the sale who would have been willing to compete in an auction but were loath to gamble in a lottery.
Since the city held the certificate from the 1963 tax sale, the Union Fern property was never offered to the public at the tax sales of 1964, 1965, 1966 and 1967. It was simply bid in by the city at the minimum. This is contrary to the code; such preferences are illegal (Matter of Coulbourn v. Burns, 206 Misc. 1058), and can furnish no basis on which the city can claim title.
Section 14-26 of the City Code provides that the notice to the owners to redeem the property together ‘ ‘ with the proof of service thereof shall be exhibited to the treasurer prior to his issuing a conveyance of such real estate, and proof of service of such notices shall be recorded with such conveyance ”. The petitioners claim that the city failed to comply with this section.
Prior to the deed herein, the notice to redeem, dated June 15, 1964, was exhibited to the City Treasurer. He was also shown numbered post-office return receipts signed by or on behalf of the petitioners. Nothing in or about these receipts connects them with the notice to redeem except a near coincidence of dates — one is postmarked June 19, 1964 and the other two appear to be postmarked June 18, 1964. The Treasurer was also shown — this was in May, 1967 — an unexcuted affidavit typed up for a William F. Steph reciting that on June 17, 1964 he had mailed the notices to redeem with return receipt requests numbered respectively as the return receipts shown the Treasurer. This was neither signed by Steph nor sworn to. Whether this was because the recitation was untrue or because Steph died on October 17, 1964, we shall never know.
In any event, having seen the return receipts, the City Treasurer accepted the unexecuted affidavit as proof of service and recorded it with the deed to the city.
CPLR 306 entitled “Proof of service” provides that “It shall be in the form of a certificate if the service is made by a *575 sheriff or other authorized public officer or in the form of an affidavit if made by any other person. A writing admitting service by the person to be served is adequate proof of service.” A certificate must be signed (People ex rel. Smith v. Foster, 27 Misc. 576). An affidavit must be so signed and sworn to as to give rise to an indictment for perjury if it proves false (People ex rel. Kenyon v. Sutherland, 81 N. Y. 1).
There is no proof of service here. Standing by themselves, the return receipts are admissions only of the receipt of numbered envelopes, and not of the notices to redeem. The only proof that the envelopes contained the notices is Steph’s meaningless paper. To say that he would have signed it as an affidavit had he lived longer is wishful thinking that ignores the reality that he lived from June 17 to October 17 and did not sign.
We conclude therefore that the city’s title was also rendered invalid by its failure to conform to section 14-26 of the City Code.
The petitioners on November 22, 1967 tendered to the city the payment of all arrears of taxes on the Union Fern property together with interest and expenses. This was refused. The date of the State’s appropriation was February 21, 1968.
The petitioners, upon making the payments hereinafter set forth, are entitled to a judgment declaring void the tax deed to the respondent city, that it be canceled of record, and that the respondents be adjudged to have no interest in the premises concerned.
The respondent city is entitled to receive payment as follows:
(a.) The sum of $6,722.65, with interest thereon at the rate of 12% per annum computed from the date of the 1963 tax sale to November 22,1967, plus $22.25 expenses.
(b.) The sum of $4,517.27, with interest thereon at the rate of 12% per annum computed from the date of the 1964 tax sale to November 22, 1967.
(c.) The sum of $4,655.52, with interest thereon at the rate of 12% per annum computed from the date of the 1965 tax sale to November 22, 1967.
(d.) The sum of $4,655.72, with interest thereon at the rate of 12% per annum computed from the date of the 1966 tax sale to November 22, 1967.
(e.) The sum of $3,977.76, with interest thereon at the rate of 12% per annum computed from the date of the 1967 tax sale to November 22, 1967.