OPINION OF THE COURT
Harry Edelstein, J.
The underlying action is maintained by plaintiff, R. M. Investors Corp., to quiet title to certain real property located at Stony Point, New York. The plaintiff claims title to the property pursuant to a tax deed issued to it by the County of Rockland on April 5, 1979. Defendant and third-party plaintiff, Carlo Maggi, has instituted a third-party action against Joseph T. St. Lawrence, Treasurer of the County of Rockland, and Roy Moskoff, individually. This third-party action is brought pursuant to article 14 of the Real Property Actions and Proceedings Law and seeks an order setting aside County Resolution No. 167 in which the legislature of Rockland *43 County voted to reject defendant’s offer of redemption and to issue a deed to the plaintiff corporation. In addition, the third-party action seeks an order directing Moskoff to pay rent of $800 per month for each month that he has occupied the premises in question. Plaintiff, R M. Investors Corp., moves for summary judgment on the question of its title to the property purchased at the auction. Carlo Maggi, the defendant, opposes plaintiff’s motion for summary judgment and cross-moves for summary judgment on his third-party complaint seeking an order setting aside the deed to R. M. Investors Corp.
The facts of the case appear to be as follows: Defendant and third-party plaintiff alleges that he acquired equitable title to the subject property as the sole survivor of Ernestina Maggi, his mother, who died in January, 1972. Ernestina Maggi acquired title to the property pursuant to the last will of her husband, Joseph Maggi, in 1958. Joseph Maggi, the original owner, acquired title to the property on March 23, 1938, at which time he filed the deed in the office of the Clerk of the County of Rockland. At all times relative to this proceeding, the property remained listed on the assessment rolls of the county in the name of Joseph Maggi and no deed to either Ernestina Maggi or Carlo Maggi, the defendant herein, appears ever to have been recorded in the office of the County Clerk. On October 23, 1974, the County of Rockland purchased a tax lien certificate at the sale of the subject property for delinquent taxes due for the year 1974. Thereafter, the county bought tax lien certificates for the property, for unpaid taxes, at annual tax sales held for the years 1975, 1976, 1977, and 1978. Not until March 30 of 1979 was a deed issued to the county for the property in question. On March 13, 1979, the county conducted a public auction of the property pursuant to County Resolution No. 268 of 1978 which authorizes the County Treasurer of Rockland County to hold public auctions, "for the sale of County owned property acquired for delinquent taxes * * * resolved that the Treasurer of the County of Rockland shall proceed to tax sale of any parcel of County-owned property acquired for delinquent taxes as expeditiously as possible and shall report back to the Budget and Finance Committee of the Legislature in no more than nine days from the date thereof.” It shold be noted that one year from the date of the original tax sale to the county in October, 1974, the county had the right, pursuant to section 1018 of the Real Property Tax Law to acquire the property by deed from the *44 County Treasurer, to sell the property for delinquent taxes, and thus place the property back on the tax rolls. The court has been informed by the County Treasurer that there was a moratorium in Rockland County on the sale of property purchased for delinquent taxes. This moratorium terminated in the year 1979. The purpose of the moratorium was to provide an informal means by which delinquent taxpayers could obtain additional time in which to redeem their property. During this five-year period the defendant alleges that he never received notice of delinquent taxes, of his right to redeem or of the notice of sale. These allegations by defendant remain uncontradicted by plaintiff and third-party defendant. On March 13, 1979, the county conducted an auction, at which time R. M. Investors Corp., by its alleged agent, Roy Moskoff, submitted a bid for the property in question. The plaintiff appears to have been the only bidder at the auction, and the bid submitted of $10,294 was equal to the unpaid taxes plus interest and penalties. At the time of the auction and on the date the plaintiff submitted its bid for the property, March 13, 1979, R. M. Investors Corp. had not yet filed a certificate of incorporation, together with the requisite fees, with the Secretary of State of the State of New York, which certificate was subsequently filed on March 27, 1979. On March 29, 1979, after the auction, but prior to the issuance of the deed to the plaintiff, the defendant Maggi, by his attorney tendered a check to the Treasurer of Rockland County in the amount of $10,294, together with a letter seeking redemption of the tax lien against the property. At a meeting held on April 3, 1979, the legislature considered defendant’s offer of redemption as well as the plaintiff’s bid at the auction and voted to reject the defendant’s offer of redemption and to issue a tax deed to the plaintiff. The decision of the legislature was announced pursuant to the Resolution No. 167 of 1979.
Defendant and third-party plaintiff Maggi argues that the deed to plaintiff R. M. Investors Corp. should be set aside for the following reasons: (1) that the treasurer acted without legal authority in auctioning the property in question before the deed was issued to the county. The county claims that on October 23, 1975, a deed could have been acquired; that the county failed to perform this "purely ministerial act” does not effect the county’s title to the property at the time in question; (2) that Resolution No. 268 of 1978 applies only to property already owned by the county at the time the resolu *45 tian was passed, and does not operate prospectively. Inasmuch as the county did not acquire a deed until March, 1979, the resolution does not authorize the sale to plaintiff; and (3) that the sale of the property for one sixth its market value violates section 1 of article VIII of the New York State Constitution. The county contends that the sole purpose of the sale was to recoup delinquent taxes and as such, the county was under no duty to sell the property for a sum greater than this amount; (4) that the county was without authority to issue a deed to the plaintiff in that the bid was made by Roy Moskoff, acting individually. Plaintiff contends that the successful bid placed by Roy Moskoff entitled the county to transfer the property by deed "to any person or entity or being Roy Moskoff selects”; (5) that Resolution No. 167 of 1979 is unconstitutionally arbitrary and unreasonable and thus, violative of defendant’s due process rights. The county fails to address this argument except to say that the county was under no legal obligation to accept defendant’s offer of redemption after the statutory period had expired.
The court holds that the deed issued to R. M. Investors Corp. should be set aside and that title shall revest in the County of Rockland subject to any jurisdictional defects which can be proven by the defendant.
Section 1018 of the Real Property Tax Law dictates the procedure by which the County Treasurer may dispose of property acquired by the county for the nonpayment of taxes:
"1. If any parcel of real property sold for taxes is not redeemed within the time limited as provided in section ten hundred ten of this chapter, upon application in writing the county treasurer shall execute to the purchaser a conveyance of the real property sold, the description of which shall include a specific statement of the title or interest thereby conveyed, so far as appears on the record in his office.
* * *
"4. In the event the county is the purchaser, the conveyance shall run to and name the county as grantee and the title thus acquired by the county may be disposed of, subject to the provisions of section ten hundred nineteen of this chapter, at such times and upon such terms as shall be determined by a majority of the board of supervisors at any meeting thereof.”
The County of Rockland was authorized, pursuant to this section, to convey property to which it held title, after a *46 meeting of the board of supervisors and upon such terms as that body directed. Title to the property passed to the county upon the delivery of a valid tax deed on March 30, 1979. (2 Rasch, Real Property Law and Practice, § 1977, citing Lee v Farone, 261 App Div 674, affd 288 NY 517.) The County Treasurer acted in excess of his authority under section 1018 in auctioning property to which the county had not yet acquired title.
The county board met in May, 1978, and enacted Resolution No. 268 which authorizes the County Treasurer to dispose of property it had acquired for nonpayment of taxes.
"resolution no. 268 of 1978 authorizing the county TREASURER OF ROCKLAND COUNTY TO HOLD PUBLIC AUCTION FOR SALE OF COUNTY OWNED PROPERTY ACQUIRED FOR DELINQUENT TAXES
"resolved, that the Treasurer of Rockland County shall proceed to tax sale on any parcel of county-owned property acquired for delinquent taxes as expeditiously as possible and shall report back to the Budget and Finance Committee of this Legislature in not more than nine months of the date hereof.” (Emphasis added.)
Resolution No. 268 of 1978 provides a legal basis under subdivision 4 of section 1018 of the Real Property Tax Law for the disposition of property acquired by the county for delinquent taxes. The plain language of the resolution refers to property already owned by the county at the date the resolution was enacted. The language of the resolution fails to indicate that it was intended to apply to the disposition of property subsequently acquired by the county. As such, Resolution No. 268 of 1978 does not provide a legal basis for the sale of the property in question. It would be improper for this court to extend by judicial interpretation the clear language of the resolution.
Statutes and local ordinances relating to the sale of property for delinquent taxes must be construed narrowly by the courts. Proceedings of this nature are creatures of statute and adherence to all statutory provisions must be strictly complied with. (Clason v Baldwin, 152 NY 204; Matter of Town of Brookhaven, 78 Misc 2d 499; De Stefano v Kaufman, 66 Misc 2d 302.) Scrupulous compliance with all statutory requirements is essential and title will be unmarketable if there is reasonable doubt of compliance with the statutory requirements. (Kassam Corp. v Walsh, 206 Misc 677, affd 4 NY2d *47 888.) This court is of the opinion that strict compliance with the requirements of section 1018 of the Real Property Tax Law and Resolution No. 268 enacted pursuant thereto was lacking in this case.
Plaintiff’s moving papers state that the bid was placed on behalf of plaintiff at an auction held on March 13, 1979, "The title passed to the plaintiff when the hammer was struck at the auction”. As noted, on this date plaintiff had not yet filed its certification of incorporation. As such plaintiff corporation was incapable under the law of placing a bid at the auction. The deed issued in the name of R. M. Investors Corp. must be set aside.
Pursuant to section 8 of the New York General Corporation Law, "No corporation shall exercise any corporate powers or privileges until such taxes and fees have been paid. Immediately upon the filing of a certificate of incorporation in the department of state the existence of the corporation created thereby shall be deemed to begin”. In the case of Kiamesha Dev. Corp. v Guild Props. (4 NY2d 378) the Court of Appeals set aside a deed issued to Guild Properties, Inc., as being void because the tax certificate was issued prior to the corporation filing a certificate of incorporation. "Here were are dealing with neither a corporation de jure nor one de facto, but with a purported entity which 'cannot take title to real or personal property, * * * acquire rights by contract or otherwise, incur debts or other liabilities, either in contract or tort, sue or be sued’ * * * A deed founded upon such a tax sale certificate has no greater validity, for if Guild Properties, Inc., acquired no rights under the certificate, it was not the owner thereof within the meaning of section 131, could not apply for nor receive a deed, and under said section the certificate is now 'void, and no claim can be maintained under the purchase’ ”. (Supra, p 389.)
The Court of Appeals went on and invalidated the deed based upon the failure to submit proof of an assignment from the individual purchasers to the corporation. In this case, there is also a lack of any evidence of an assignment from Roy Moskoff to R. M. Investors Corp.
One other fact must be noted. The records maintained by the Treasurer of Rockland County for the auction conducted on March 13, 1979, indicate that the property in question was sold to a "Hudson Valley Landscaping” for $1,029.40. Although the court has made numerous inquiries to the county *48 seeking an explanation as to why Hudson Valley Landscaping is listed as the successful bidder, and what interest this entity has in the subject property, no explanation has been forthcoming. For the reasons set forth the court sets aside the deed issued to the plaintiff R M. Investors Corp. on April 4, 1979, thereby revesting title to the property in the County of Rockland pursuant to the deed issued on March 30, 1979.
The title now revested in the county is subject to any jurisdictional defects which defendant is able to establish at trial. The purpose of the tax foreclosure statutes is to afford municipalities a practicable means to foreclose on tax liens and to collect delinquent taxes by the sale and delivery of marketable titles following foreclosure. (2 Rasch, Real Property Law and Practice, § 1983.) Because the owner is being divested of his title, the Legislature enacted certain statutory requirements for the taxpayer’s benefit. Unless these statutory requirements are strictly complied with, courts are without jurisdiction to quiet title. (Helterline v People, 295 NY 245, 251.)
Defendant, third-party plaintiff Carlo Maggi challenges the county’s compliance with the various requirements of the Real Property Tax Law pertaining to the sale of property for delinquent taxes and the owner’s right of redemption. The Real Property Tax Law imposes certain time limitations for raising these jurisdictional defects.
Section 1002 of the Real Property Tax Law, notice of sale, provides:
"1. The county treasurer shall at the time specified in section ten hundred of this chapter for the commencement of tax sale proceedings in his county, cause a notice of tax sale to be published once in each of three non-consecutive weeks in a six week period in two newspapers designated for the publication of the concurrent resolutions specifying a day at the expiration of the six weeks on which the sale will commence at the courthouse of the county.
* * *
"3. Proof of the publication of the notice shall be filed in the office of the county treasurer and in the office of the county clerk within twenty days after the last publication.
* * *
"4. The county treasurer shall also, prior to the commencement of publication required by subdivision one of this section, *49 cause notice of such tax sale to be sent by first class mail to the name and address of the owner or occupant, as shown on the assessment roll, of each parcel to be sold. Such notice shall contain a brief description of such parcel, the aggregate amount due on such parcel at the time of sale, and a statement that unless such amount is paid prior to the commencement of tax sale proceedings the parcel will be sold. The expense of mailing such notice shall be an additional expense chargeable against the parcel.”
One year from the date of such sale the owner may redeem his property by paying to the County Treasurer the amount mentioned in the certificate of sale plus interest.
Section 1110 of the Real Property Tax Law states: "1. Before instituting an action to foreclose a tax lien as in an action to foreclose a mortgage under this title, the owner of such tax lien shall serve a notice to redeem by registered mail upon the record owner, and mortgagee if any, of the real property affected by such tax lien by mailing the same to them, addressed according to the name and address as the same appears on the records of the enforcing officer”.
Pursuant to section 1014 of the Real Property Tax Law, the County Treasurer must comply with certain notice requirements relating to the owner’s right to redeem.
"1. The county treasurer shall, at least three months before the expiration of the one year allowed for the redemption of lands sold by him for taxes, cause commencement of publication of a notice once in each of three non-consecutive weeks in a six week period in the newspapers designated by the board of supervisors of the county for the publication of concurrent resolutions, such notice to contain a list of the lands in the county sold for taxes and unredeemed, specifying particularly every parcel unredeemed, the amount necessary to redeem the same computed to the last day in which such redemption can be made and stating that unless such lands are redeemed on or before such day they will be conveyed to the purchaser.
* * *
"3. The county treasurer shall, not less than fourteen days prior to the commencement of the publication required by subdivision one of this section, send by first class mail to the name and address of the owner or occupant, as shown on the assessment roll, of each parcel sold and unredeemed a statement containing a brief description of such parcel, the amount *50 necessary to redeem the parcel computed to the last day on which such redemption can be made and stating that unless such parcel is redeemed on or before such day it will be conveyed to the purchaser.
* * *
"4. Proof of the publication of the notice shall be filed in the office of the county treasurer and in the office of the county clerk within twenty days after the last publication.”
Assuming the proper notification within the applicable time period, the County Treasurer may issue a deed to the county and the county may dispose of the property as provided by section 1018 of the Real Property Tax Law.
"1. If any parcel of real property sold for taxes is not redeemed within the time limited as provided in section ten hundred ten of this chapter, upon application in writing the county treasurer shall execute to the purchaser a conveyance of the real property sold, the description of which shall include a specific statement of the title or interest thereby conveyed, so far as appears on the record in his office.
"2. Every such conveyance shall be executed by the treasurer of the county, under his hand and seal, and may be recorded in the same manner and with like effect as a conveyance of real property properly acknowledged or proven.
* * *
"3. If application for a conveyance is not made within five years from the last day of the sale, the certificate of sale, except where held by the state, the county or the purchaser who is the owner of record of the lands sold, shall become void and no claim may be thereafter maintained on such certificate.
"4. In the event the county is the purchaser, the conveyance shall run to and name the county as grantee and the title thus acquired by the county may be disposed of, subject to the provisions of section ten hundred nineteen of this chapter, at such times and upon such terms as shall be determined by a majority of the board of supervisors at any meeting thereof.” (Emphasis supplied.)
Pursuant to section 1020 of the Real Property Tax Law, a deed issued by the County Treasurer to the county is presumptive evidence of regularity of all proceedings prior thereto and all notices required by law in connection there *51 with. Two years from date such deed is recorded, the presumption of regularity becomes conclusive and irrebuttable.
”1. A conveyance by the county treasurer pursuant to section ten hundred eighteen of this chapter shall vest in the grantee an absolute estate in fee, subject, however, to (a) all claims of the county, town, city, village or state for taxes, liens or other encumbrances and subject to all easement or rights of way which were in existence at the time of the levy of the tax the non-payment of which resulted in the tax sale, (b) redemption as provided in sections ten hundred twenty-two and ten hundred twenty-four of this chapter and (c) cancellation as hereinafter provided.
* * *
"3. Every such conveyance shall be presumptive evidence that the sale and all proceedings prior thereto from and including the assessment of lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto. After two years from the date of the record of such conveyance such presumption shall be conclusive; provided, however, that any such conveyance shall be subject to cancellation by reason of (a) the prior payment of the taxes, the nonpayment of which resulted in the sale, (b) the illegal levy thereof by the city or town or (c) any defect in the proceedings affecting jurisdiction upon constitutional grounds, if application is made to a court of competent jurisdiction within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be cancelled.
"4. In the counties of Rockland, Orange and Ulster, every deed given pursuant to the provisions of section ten hundred eighteen of this chapter shall be presumptive evidence that the action and all proceedings therein and all proceedings prior thereto from and including the assessment of the lands affected and all notices required by law and service of all papers, regularity of service of notice to redeem and affidavits of service in connection therewith were regular and in accordance with all provisions of law relating thereto. After two years from the date of the record of such deed the presumption shall become conclusive, as pertains only to the county of Ulster if at the time that this section takes effect the two year period since the record of the deed has expired or less than six *52 months of such period of two years remain unexpired, then in which case the presumption shall become conclusive six months after this section takes effect. No action to set aside such deed may be maintained unless the action is commenced and a notice of pendency of the action is filed in the office of the county clerk prior to the time that the presumption becomes conclusive as aforesaid.”
The deed in question was issued on March 30, 1979. Although a presumption of regularity attaches to this deed, the presumption does not become conclusive and therefore irrebuttable until March 30, 1981. Third-party plaintiff Maggi is likewise not foreclosed from instituting his third-party action until the above date. (Real Property Tax Law, § 1020.)
The county asserts the statutory presumption of regularity and claims compliance with all notice and filing requirements. In response, counsel for third-party plaintiff Maggi submits an affidavit stating that their investigations reveal that the county has failed to file the requisite proof in the office of the County Clerk. The court is thus presented with an issue of fact regarding the regularity of the proceedings leading to the issuance of the deed to the county, which may not be disposed of upon this motion for summary judgment.
The final issue to be decided is defendant and third-party plaintiff Maggi’s claim that Resolution No. 167 of 1979 is unconstitutionally arbitrary and therefore violates due process of law. The resolution in question rejected Carlo Maggi’s offer of redemption and a check tendered in the amount of $10,294 and authorized the County Treasurer to issue a quitclaim deed to plaintiff for the same amount. Resolution No. 167 was designed to govern a matter of special or temporary nature, i.e., the acceptance of a particular bid or a particular parcel of land. Such a resolution may be characterized as administrative in nature rather than legislative. (Matter of Jewett v Luau-Nyack Corp., 31 NY2d 298.) In exercising its discretionary administrative functions, due process demands that the county legislature relate each individual case to articulated standards and must state its reasons and findings as far as is feasible. Fundamental to our system of government is the notion that due process demands that a law not be unreasonable or arbitrary. (Matter of Spielvogel v Ford, 1 NY2d 558.) In the case of Holmes v New York Housing Auth. (398 F2d 262), the housing authority received 90,000 applications annually for public housing, but could admit only 10,000 applicants. *53 Applications were not processed chronologically or in accordance with any ascertainable standard. Defendant claimed that the lack of standards increased the likelihood of "favoritism, partiality, and arbitrariness” (supra, at p 264). The Second Circuit held that "due process requires that selection among applicants be made in accordance with 'ascertainable standards’ ”. (Supra, at p 265.) In the case of Hornsby v Allen (326 F2d 605), plaintiff brought an action for deprivation of his civil rights under section 2201 of title 28 of the United States Code, claiming that the Mayor and aldermen of Atlanta had denied his application for a liquor license on the basis of "a system of ward courtesy” (supra, at p 607). The court held "[t]he public has the right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit * * * absolute and uncontrolled discretion invites abuse” (supra, at p 610). In Environmental Defense Fund v Ruckelshaus (439 F2d 584), the court in reviewing the administrative determination which failed to suspend the registration of D.D.T. as a pesticide held "[¡Judicial review must operate to ensure that the adminstrative process itself will confine and control the exercise of discretion. Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible * * * Discretionary decisions should more often be supported with findings of fact and reasoned opinions” (supra, at p 598). The Court then remanded the case for explanation and formulation of standards. This concept has perhaps been articulated most eloquently by the United States Supreme Court in the case of Yick Wo v Hopkins (118 US 356, 369-370) "when we considered] the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power * * * [f]or, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails”.
Defendant Maggi argues that Resolution No. 167 of 1979 as set forth in the minutes of the meeting of the legislature held on April 3, 1979, arbitrarily and unreasonably rejected his offer of redemption in that there were no standards or guide *54 lines for determining under what circumstances the county would permit such redemption. As such, defendant argues he was deprived of a significant property right without due process of law. The county fails to address this issue except to say that "It was within the Legislature’s power to accept the defendant’s offer and convey the property back to him. However, since defendant’s period of redemption had expired the Legislature did not have to do so as a matter of law”. The county has misconceived the nature of defendant’s due process claim. There is no question but that the statutory period for redemption as of right had expired. However, once the county agreed to extend the redemption period by imposing a moratorium on tax foreclosure proceedings and agreed to consider defendant’s offer of redemption after a bid had been placed and accepted at the public auction, it may not then turn around and reject defendant’s offer in an arbitrary and unreasonable manner. To do so offends notions of fairness and due process of law. As noted in the Holmes case (398 F2d 262, 264, supra), to permit a discretionary decision to be made without reference to any objective standards will increase the likelihood of favoritism, partiality and arbitrariness. The court finds that the decision to reject defendant’s offer of redemption contained in Resolution No. 167 of 1979 was made without reference to any articulated standards.
Concern over the lack of standards for making determinations of this nature was noted by the legislators themselves.
"Ms. O’Sullivan stated: 'It bothers me, now that you tell me that we are going to have to vote repeatedly on a case by case basis everytime one of these bids comes up, I don’t feel I have enough information. I have heard an awful lot of conflicting stories about the situation that is involved here. And if I’m going to have to vote each time on each individual situation rather than set a precedent then I’m going to want to know a lot more about the circumstances of each situation before I’m ready to vote on it.’
"Dr. Sullivan stated that he does not know Joseph Maggi, nor know where the property is located in Stony Point. '. . . I understand this individual has made a request to pay whatever delinquent taxes there are. Before I vote yes, or any of us vote yes, I think we ought to try and find out what the circumstances were. If he is senile or that this man was informed and he was delinquent maliciously. I understand the property is worth thousands of dollars; $40,000 — $50,000— *55 $60,000, and the individual who bought it, bought it for $10,000 ... I would feel much better if we knew more about what is happening. If this is going to be continuous and it may very well beause many of our senior citizens can no longer meet the tax situation, we should at least get more background so that in good conscience, we would not deprive this man of something he worked so many years for.’ ”
(Meeting of the Rockland County Legislature, April 3, 1979.)
A review of the mintues of the meeting and the papers submitted, clearly indicate that the county has failed to develop any standards at all for determining whether to accept an auction bid or an offer of redemption. The entire procedure therefore constitutes an unconstitutional termination of defendant’s property rights.
It must be noted that in setting aside Resolution No. 167 as unconstitutionally arbitrary, the court is not reviewing the wisdom of the legislature’s decision to reject defendant’s offer of redemption. No findings are made with respect to the appropriate disposition of the property in question. The court directs, in accordance with the requirements of due process of law, that the county legislature establish meaningful standards and procedures governing the disposition of property acquired by the county for nonpayment of delinquent taxes.
In conclusion, by this decision, plaintiff’s motion for summary judgment is denied. Defendant and third-party plaintiff Carlo Maggi’s motion for summary judgment is granted to the extent that the court sets aside the deed issued to R. M. Investors Corp., on April 4, 1979, thereby revesting title to the property in question in the County of Rockland pursuant to the deed issued by the County Treasurer on March 30, 1979. The county is directed to return to the plaintiff $10,249 the amount paid by plaintiff to acquire said deed. The county’s title is subject to any jurisdictional defects which defendant is able to establish at the trial of his third-party action.