Barbara SAMARA and Joan Samara, Plaintiffs,

v.

CITY OF NEW YORK, Defendant.

No. 81 Civ. 4240–CSH.

United States District Court, S. D. New York.

April 6, 1982.

Bragar, Spiegel, Schulman, Rubin & Driggin, New York City, for plaintiffs; Raymond A. Bragar, William S. Beslow, Edward Rubin, New York City, of counsel.

Frederick A. O. Schwarz, Jr., Corp. Counsel, New York City, for defendant; David Dworetsky, Asst. Corp. Counsel, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This suit concerns a townhouse, valued at approximately one million dollars, located on the upper East side of Manhattan. This townhouse was left in trust to the Samara sisters, the plaintiffs herein, by their father.[1] At the time of the critical events in question, this trust was managed by Burton A. Schenley, an attorney, who had been appointed trustee by Order of the Supreme Court of New York County on November 29, 1962.[2] The City foreclosed on the townhouse for failure to pay outstanding taxes of thirty-six thousand dollars, and now claims absolute title since the property was never redeemed. The Samaras, who now

---

1. The trust was originally created by Edward Samara, plaintiffs' father. The plaintiffs are remaindermen under a Trust Indenture dated February 18, 1946, made by their aunt, Ida Parker.

2. Schenley was removed as trustee on October 16, 1980, by the Supreme Court of New York County. An order to this effect was entered on November 12, 1980. The Appellate Division of the Supreme Court of the State of New York

have full legal interest in the property,[3] sue to require the City to permit redemption and reconveyance of the property. They contend that the City failed to comply with the statutorily required prerequisites to the assumption of absolute title to the townhouse.

The following facts are either agreed upon or undisputed by the parties. The property was foreclosed by the City on May 25, 1978. Schenley filed an application for redemption on July 25, 1978. The City approved this application for both form and timeliness. In a letter dated November 7, 1979, the City notified Schenley that all outstanding taxes had to be paid by January 8, 1980, failing which the property would be sold at public auction. The City mailed this letter, by certified mail, return receipt requested, to Schenley's office in New York City. The letter was returned to the City because Schenley had moved to Florida and no longer maintained an office in New York. Schenley had informed the appropriate City official by telephone of his change of address prior to the date the letter was first mailed,[4] and upon receiving the returned letter, the City then remailed it, by regular mail, to the correct Florida address.[5] Schenley received the letter in Florida on or about December 11 or 12, 1979. Since the City had not changed the deadline of January 8, 1980, Schenley had less than thirty days actual notice prior to the lapse of the redemption rights.

About the time of the January 8 deadline, A. Goldkopf, Director, Bureau of Property Records of the City of New York, extended the time within which Schenley could pay the outstanding taxes. Schenley paid over five thousand dollars ($5,000) which the City accepted, subsequent to the initial January 8 deadline. The City also sent Schenley two additional notices subsequent to this deadline. The first of these notices, mailed on May 29, 1980, demanded full payment in thirty days. The second, mailed on July 31, 1980, demanded full payment in thirty-two days, with a deadline of September 2, 1980.

On September 3, 1980, one day after the last of these deadlines, Goldkopf wrote to William S. Beslow, the Samaras' attorney, extending the deadline until September 12, 1980—an additional nine days. Beslow had written to Goldkopf on August 20, 1980, expressing the Samaras' concern over the outstanding taxes and assuring the City that the Samaras would make arrangements to pay all taxes due. By letter of September 17, 1980, Goldkopf informed Schenley that because of his "failure to pay the consideration necessary to redeem the above property within the 60 day period defined by Section D17–25.0 of the Administrative Code," [6] the City was "taking the necessary steps to offer this property for sale at public auction." In a letter dated October 3, 1980, Goldkopf advised Schenley that "The City of New York has title to this property absolute."

subsequently suspended Schenley from the practice of law for a period of one year.

3. Both Samara sisters have reached the age at which their interests vested under the terms of the trust.

4. Schenley so avers in an affidavit filed in support of the present motion. That averment is nowhere denied by the City, and accordingly I accept it as fact.

5. The original envelope, mailed to Schenley's former City address and returned to sender because the addressee could not be located, was handed up as an exhibit at the oral argument.

6. A.C. D.17–25.0(f) reads:

"If an application pursuant to this Section is filed within four months after the date of the city's acquisition of the subject property, said application shall be granted provided the corporation counsel approves the application as to form, timeliness and eligibility of the applicant, and providing the applicant has paid all amounts required to be paid by subsection (d) of this section within 60 days of the date on which the letter requesting applicant to make such payment is mailed or delivered to the applicant."

The parties agree that Schenley filed his application for redemption, approved for form and timeliness, within the mandatory release period (the four month period) and was therefore entitled to sixty days' notice.

Plaintiff's motion for summary judgment stands ready for decision in the following posture. The City now concedes that regardless of an earlier stipulation it entered into with Schenley concerning installment payments, the City was required to give sixty days' notice prior to the lapse of redemption rights pursuant to A.C. D17–25.-0(f). The City contends that it fully complied with this statutory notice requirement because it gave Schenley nearly nine months' additional time to pay the outstanding taxes after it first sent him notice of the January 8 deadline. The Samaras argue that the City failed to provide the required notice because Schenley was never given sixty days' notice of any date certain upon which the redemption rights would terminate.

It has long been fundamental that an owner cannot be deprived of title to his property unless there has been a strict compliance with the provisions of the tax statutes, and these statutes are to be liberally construed in the owner's favor. Over a century and a half ago, Chief Justice Marshall, speaking of tax sales, explained:

"That no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court." *Thatcher v. Powell*, 6 Wheat. 119, 5 L.Ed. 221 (1821).

This principle has long been adhered to in New York. The New York State Court of Appeals has explained:

"The purpose of the prescribed statutory process for assessment, sale and redemption is to compel payment of taxes overdue and, in default of such payment to transfer the title of real estate from the owner thereof to another without the owner's consent. This being the nature of the process, the owner's title may not be divested unless statutory requirements are strictly observed."

*Helterline v. People*, 295 N.Y. 245, 251, 66 N.E.2d 345 (1946). Accord *Petition of the Town of Brookhaven*, 78 Misc.2d 499, 354 N.Y.S.2d 794, 795, 801 (Sup.Ct. Suf. Cty. 1974) ("Since a tax sale proceeding may divest an owner of his title, it has been held that 'scrupulous' or 'strict' compliance . . . with the statutory sections permitting divestiture is required.") (citations omitted); *DeStefano v. Kaufman*, 66 Misc.2d 302, 320 N.Y.S.2d 825, 829 (Sup.Ct. Onondaga Cty. 1971) ("The technical requirements of the law must be adhered to strictly since these statutes divest a property owner of his property."); *R.M. Investors Corp. v. Maggi*, 104 Misc.2d 41, 427 N.Y.S.2d 919, 923 (Rockland Cty. 1980) ("Statutes and local ordinances relating to the sale of property for delinquent taxes must be construed narrowly by the courts. Proceedings of this nature are creatures of statute and adherence to all statutory provisions must be strictly complied with."). Explaining the equitable roots of this principle, one New York court has observed:

"Because the loss of one's property is such a harsh penalty for the nonpayment of a tax while the taxing body can always be made whole by the payment of arrears with interest and expenses, the law will deprive an owner of his title only if the provisions of the pertinent statutes have been strictly met and these provisions will be liberally construed in the owner's favor."

*Vivenzio v. City of Utica*, 58 Misc.2d 571, 296 N.Y.S.2d 419, 422 (Sup.Ct. Oneida Cty. 1969), aff'd, 33 A.D.2d 657, 306 N.Y.S.2d 671.

Applying this principle to the instant case, I find that the City did not comply with the statutory requirements, and hence the City's claim to absolute title in the townhouse is fatally defective. The parties agree that the City was statutorily required to provide Schenley with notice that redemption rights in the property would terminate sixty days after the date of notice. Such notice serves two functions. First, it gives the owner a sixty day period

within which he can marshal and liquidate his assets in order to obtain the funds necessary to pay outstanding taxes. Second, it provides the owner with a date certain by which the taxes must be paid, failing which, redemption rights lapse.

The City's argument focuses on the first function served by the statutory notice provision. By extending Schenley's time to pay the outstanding taxes, it undoubtedly provided him with a period substantially greater than sixty days to obtain the necessary monies. But the City ignores the second function, and it is here that its argument must fail. However much additional time the City may have extended to Schenley, the City never provided him with sixty days' notice of any date certain on which the redemption rights would lapse if the outstanding taxes had not been paid. The original notice was mailed to Schenley's correct address less than sixty days prior to the deadline it established.[7] Each of the subsequent notices sent to Schenley, as well as the September 3d letter sent to Beslow, provided less than sixty days' notice on its face. Accordingly, the City failed to comply with the statutory prerequisites required before it can divest an owner of his property.[8]

The City's argument reduces the statutory notice provision to nothing more than a requirement that the taxpayer be given sixty days to pay outstanding taxes prior to the lapse of redemption rights. Were this the case, once the City allowed for tax payments beyond the sixty day period, the taxpayer would be placed at the City's mercy. The City could, at any time and upon little or even no notice whatsoever, terminate the taxpayer's redemption rights. This construction of the notice requirement flies in the face of the fundamental principle that tax foreclosure statutes are to be construed liberally in favor of the taxpayer.

## CONCLUSION

For the foregoing reasons plaintiffs' motion for summary judgment is granted.

Counsel for plaintiffs are directed to settle a judgment in conformity with this opinion on five (5) days' notice.

It is So Ordered.

---

**7.** As noted, A.C. D.17–25.0(f) provides that sixty days' notice must be given from the date on which the letter "is mailed or delivered to the applicant." The statute must be read to require that the letter be mailed to the taxpayer's correct address where the City has been informed by the taxpayer of a change of address. In any case, the City now relies on its argument that the sixty day notice requirement was satisfied by the additional time given Schenley to pay the taxes due.

**8.** The City's failure to comply with the statutory notice provision distinguishes this case from *Nelson v. New York City,* 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956). The City properly relies on *Nelson* for the proposition that "the City cannot be charged with responsibility . . . for the carelessness of the managing trustee in overlooking notices of arrearages." *Id.* at 108, 77 S.Ct. at 198. Unlike the situation here, however, the *Nelson* Court expressly noted that "there is no claim that the bills for water charges were not mailed to the estate . . . . [I]t is not disputed that the notices were mailed to the proper address." *Id.* at 107, 77 S.Ct. at 197.

Nor can the City succeed in arguing that its attempts to comply with the statute or the extensions of time granted the owner were made in "good faith" and therefore justify its non-compliance. As the Court of Appeals for the Seventh Circuit has explained, "Equitable considerations as to good faith efforts to comply with the statutes have no bearing in this situation. [State] cases make clear that non-compliance with any of the steps that precede a tax sale is fatal to the validity of the tax deed." *Long v. Anderson,* 536 F.2d 739, 742 (7th Cir. 1976). In *Aronauer v. St. Lawrence,* 106 Misc.2d 227, 430 N.Y.S.2d 977, a New York court recently invalidated a tax sale where the county had failed to serve the record owner with the statutorily required notice of redemption prior to the expiration of the redemption period. The court rejected the county's argument that the County Treasurer was unaware of the recent amendment to the statute requiring such notice and stated: "Strict compliance with the statutory notice and filing requirements imposed upon a tax sale is a prerequisite for the purchaser to obtain good title against the record owner." *Id.* 430 N.Y.S.2d at 981.